COMMONWEALTH *vs.* ARTHUR ROUCOULET, JR.

Berkshire. October 8, 1992. - November 6, 1992.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Controlled Substances. "School Zone" Statute. Statute*, Construction.

On appeal from a conviction under G. L. c. 94C, § 32J, for violating G. L.
c. 94C, § 32E, trafficking in cocaine, while within 1,000 feet of a
school, this court rejected defendant's argument that § 32J requires for
conviction that the defendant must have intended to distribute the co-
caine inside the school zone, and concluded that § 32J applies if, within
a school zone, a defendant is shown to have possessed cocaine with the
intent to distribute it somewhere, whether within or outside the zone.
[650-653]

INDICTMENT found and returned in the Superior Court De-
partment on October 24, 1989.

A motion to dismiss was heard by *William W. Simons*, J.,
and the case was heard by *Lawrence B. Urbano*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Nona E. Walker*, Committee for Public Counsel Services,
for the defendant.

*Paul J. Caccaviello*, Assistant District Attorney, for the
Commonwealth.

GREANEY, J. On December 3, 1990, the defendant, Arthur
Roucoulet, Jr., entered a guilty plea in the Superior Court to
an indictment charging him with trafficking in cocaine, G. L.
c. 94C, § 32E (1990 ed.), after which he was sentenced to a
term of from five to nine years.[1] On the same day, the de-
fendant was tried, jury-waived, before the same Superior

---

[1]The defendant also entered guilty pleas on two indictments charging
assault and battery with a dangerous weapon, and one indictment charging
him with trafficking in cocaine.

Court judge who had accepted this guilty plea on an additional indictment brought pursuant to G. L. c. 94C, § 32J, as inserted by St. 1989, c. 227, § 2, the so-called school zone statute.[2] That indictment charged a violation of "section 32A and section 32E, of [G. L. c.] 94C, while in or on, or within [1,000] feet of the real property comprising a . . . school."[3] The judge found the defendant guilty under this indictment and imposed an additional sentence of from three to five years to be served from and after the sentence imposed on the trafficking charge. The defendant appealed from his conviction on the school zone charge, and we allowed the defendant's petition for direct appellate review. He contends that the school zone statute requires for conviction that a defendant must intend to distribute the drugs inside the school zone and that, because the Commonwealth's proof was inadequate on this point, his motion for a required finding of not guilty should have been allowed.[4] We reject the argument and affirm the defendant's conviction.

There was evidence at the jury-waived trial of the following events. On September 25, 1989, a State police officer, working undercover, made arrangements to purchase cocaine from Joseph DiFilippo. DiFilippo was kept under surveillance as the transaction progressed and was observed meeting the

---

[2]The part of this statute that applies to this case reads as follows:

"Any person who violates the provisions of section thirty-two, thirty-two A, thirty-two B, thirty-two C, thirty-two D, thirty-two E, thirty-two F or thirty-two I while in or on, or within one thousand feet of the real property comprising a public or private elementary, vocational, or secondary school whether or not in session shall be punished by [penalties as specified].

"Lack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of this section."

[3]General Laws c. 94C, § 32A, makes criminal the possession with intent to distribute cocaine. Section 32E of the same chapter defines the crime of trafficking to include the possession with intent to distribute a minimum of fourteen grams of cocaine.

[4]The issue raised by the defendant was reserved in *Commonwealth* v. *Taylor, ante* 243, 248 n.7 (1992). Other challenges raised by the defendant to the validity of G. L. c. 94C, § 32J, have been decided adversely to him in *Commonwealth* v. *Alvarez, ante* 224 (1992).

defendant, who was in a Dodge Caravan motor vehicle on Center Street in Pittsfield. After his contact with the defendant, DiFilippo sold cocaine to the officer.

A second drug sale was arranged between the undercover officer and DiFilippo for October 10, 1989. DiFilippo met with the officer at DiFilippo's home and was given marked money. DiFilippo advised the officer that he was waiting for a telephone call from his supplier, "Art," to obtain the drugs. After receiving a telephone call, DiFilippo left his home. Surveillance by other police officers disclosed that DiFilippo drove to the parking lot of a Cumberland Farms store located at First Street in Pittsfield where he met the defendant who again was driving a Dodge Caravan motor vehicle. The Cumberland Farms parking lot is located 325 feet from an elementary school.

DiFilippo entered the defendant's vehicle and the two drove around nearby streets for a short time before returning to the parking lot. At this point, officers began to move in on the vehicle to make arrests. Apparently, upon detecting the officers, the defendant immediately accelerated and drove the vehicle away. The police pursued, and during a short chase, officers observed various objects being thrown from the vehicle.[5] When the van was stopped DiFilippo and the defendant were arrested. A search of the vehicle led to the seizure of a large quantity of cocaine, cutting agents which could be used to increase the cocaine's quantity, and some of the marked money given DiFilippo by the undercover officer. Based on these events, the Commonwealth brought the aforementioned charges against the defendant.

In connection with his motion for a required finding of not guilty on the school zone charge, the defendant's trial counsel argued that, at best, the Commonwealth's evidence showed the defendant to have possessed cocaine within a school zone with the intent to distribute it outside of the zone to the undercover officer who remained at DiFilippo's home.

---

[5]The objects were recovered and included baggies containing cocaine, money, and an "OZ" sheet which is a drug dealer's record of transactions.

The defendant's trial counsel maintained "the mere possession of drugs within the zone, intended for distribution outside of the zone, is not conduct proscribed by the statute."[6] In dispute is the issue whether G. L. c. 94C, § 32J, applies if, within a school zone, a defendant is shown to have possessed cocaine with the intent to distribute it somewhere, whether within or outside the zone.

Section 32J does not logically permit the interpretation the defendant seeks to place on it. By its express terms, a violation is made out if a defendant is shown to have committed one of the enumerated acts that constitute crimes under G. L. c. 94C "while in or on, or within" 1,000 feet of a school. The quoted words are clearly meant to fix the location where the predicate crime must take place. General Laws c. 94C, §§ 32A and 32E, which in relevant part make criminal the possession with intent to distribute cocaine, do not require for conviction that a defendant have an intent to distribute within any specific area. Considered term by term, § 32J contemplates a violation in three instances — when one of the identified drug crimes is committed (a) *in* a school; (b) *on* school property; or (c) *within* 1,000 feet of school property. "After the elements of [the predicate] offense have been established, one need only take out the tape

---

[6]The prosecution argued two theories to obtain a conviction on the school zone charge. These theories were based on the defendant and DiFilippo acting as joint venturers. First, the prosecutor argued that G. L. c. 94C, § 32J, does not require an intent to distribute within the school zone and, therefore, the presence of DiFilippo and the defendant in the parking lot, while in possession of drugs in a quantity inconsistent with personal use, brought them within the statute. Second, the defendant's intent to distribute, or to traffic, had been made out by a showing that the defendant was going to deliver cocaine to DiFilippo in the parking lot, which the latter would sell to the undercover officer waiting at DiFilippo's house. In finding the defendant guilty, the judge did not indicate which theory he adopted or whether he found both had been proved. The case, however, fairly raises the issue we are about to consider, which is important to an understanding on how a judge should apply § 32J and instruct a jury.

measure to see if [the school zone provision of § 32J] has been violated." *State* v. *Ivory*, 124 N.J. 582, 593 (1991).[7]

The result we reach is the same result reached by better reasoned decisions which have considered the issue in connection with the interpretation and application of analogous school zone statutes. In *State* v. *Ivory, supra*, the New Jersey Supreme Court had before it the appeal of a defendant who was found to possess cocaine and marihuana with intent to distribute while within 1,000 feet of school property. The court upheld the trial court's determination that the possibility that the defendant intended to distribute the drugs outside the school zone was irrelevant under the New Jersey school zone statute, N.J. Stat. Ann. § 2C:35-7 (West 1991 Supp.). *Id.* at 585. The court noted that the New Jersey statute had to be given a fair and natural interpretation. "Clearly, the Legislature intended to create drug-free zones of safety where children could be, learn and play free of the potential infection of drugs. One contaminating these safety zones is liable, regardless of whether he or she intended to infect those here or others elsewhere. Such a stance is legitimate and warranted in the effort to prevent primary and secondary school students in this State from using drugs. The statute presents a rational and reasonable approach by the Legislature to reduce drugs around schools." *Id.* at 594-595.

In *United States* v. *Wake*, 948 F.2d 1422 (5th Cir. 1991) cert. denied, 112 S. Ct. 2944 (1992), the Court of Appeals for the Fifth Circuit considered facts similar to the facts in this case and, in connection with the Federal school zone statute, 21 U.S.C. § 860 (1988 & Supp. II 1990), rejected identical arguments to those made here. The court concluded

---

[7]Because we conclude that § 32J is unambiguous, there is no occasion to examine legislative history. This notwithstanding, we note that what legislative history exists tends to confirm our interpretation of the statute's purpose. In a January 12, 1989, communication to the members of the Massachusetts Senate and House of Representatives, then Governor Michael S. Dukakis indicated that he was proposing the legislation that ultimately became G. L. c. 94C, § 32J, in order to "establish a 1,000 feet drug-free school zone . . . . [in order to make] every school and surrounding community safe from the destructive impact of drug trafficking and drug abuse."

that the Federal school zone "statute must be taken for what it says and be applied even in cases where schoolchildren may not be *directly* in danger," (emphasis in original), *id.* at 1432, and it noted that "the case before us 'is the paradigm of the conduct Congress sought to deter through the schoolyard statute penalty enhancements."[8] *Id.* at 1433 n.9. These observations apply to § 32J, and to this case.

The conclusion that § 32J is clear in fixing the location of the crime also precludes resort to the so-called rule of lenity contended for by the defendant. That rule may be applied when a statute can plausibly be found to be ambiguous to give the defendant the benefit of the ambiguity. Section 32J, however, is not ambiguous, and the statutory language discloses a clear legislative purpose to create drug-free school zones. The following comments by Justice Kaplan in *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 25-26 (1989), have relevance at this point to the defendant's lenity argument. "The language of the statute easily permits [the] interpretation [we place upon it], and it is reason for accepting the reading that the defendant's contrary interpretation would create great practical difficulty in the enforcement of the law. We cannot suppose that a Legislature which has [adopted progressively stricter measures to stop drug sales and] trafficking would be content with the defendant's interpretation or its practical result. The maxim that penal statutes are to be strictly construed does not mean that an available and sensible interpretation is to be rejected in favor of a fanciful or perverse one. See *Edgartown* v. *State Ethics Comm'n*, 391 Mass. 83, 90 (1984) (quoting from *Simon* v. *Solomon*, 385 Mass. 91, 102-103 [1982]: the maxim 'is a

---

[8]The court in *Wake* also rejected contrary authority from three Federal District Courts. See *United States* v. *McDonald*, 777 F. Supp. 43, 45-46 (D.D.C. 1991); *United States* v. *Testa*, 768 F. Supp. 221, 223 (N.D. Ill. 1991); *United States* v. *Liranzo*, 729 F. Supp. 1012, 1014 (S.D.N.Y. 1990); *United States* v. *Coates*, 739 F. Supp. 146, 153 (S.D.N.Y. 1990); *United States* v. *Roberts*, 735 F. Supp. 537, 540-542 (S.D.N.Y. 1990). The reasoning in these decisions is conclusory and nonpersuasive in view of the unambiguous language of § 32J.

guide for resolving ambiguity, rather than a rigid require-
ment that we interpret each statute in the manner most
favorable to defendants'); *United States* v. *Restrepo*, 676 F.
Supp. 368, 372 (D. Mass. 1987), aff'd, 867 F.2d 605 (1st
Cir. 1988) ('I must not construe the criminal statute so
strictly as to defeat the obvious intention of the legisla-
ture. . . . Nor may I manufacture ambiguity to invoke the
rule of lenity so as to defeat that intent')." (Footnotes
omitted.)

Nothing else argued by the defendant persuades us to his
position.

*Judgment affirmed.*