## COMMONWEALTH vs. MARQUISE BROWN.

Middlesex. September 4, 2013. - December 24, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Constitutional Law,* Sentence, Cruel and unusual punishment, Parole, Severability. *Due Process of Law,* Sentence, Parole. *Parole. Homicide. Practice, Criminal,* Sentence, Parole, Capital case. *Statute,* Severability.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 6, 2012.

The case was reported by *Botsford,* J.

*Michael A. Kaneb,* Assistant District Attorney (*Christopher M. Tarrant & Robert J. Bender,* Assistant District Attorneys, with him) for the Commonwealth.

*Barbara Kaban,* Committee for Public Counsel Services (*James H. Budreau* with her) for the defendant.

The following submitted briefs for amici curiae:

*Marsha L. Levick, Emily C. Keller, & Lauren A. Fine,* of Pennsylvania, for Juvenile Law Center & others.

*Timothy J. Cruz,* District Attorney, *& Robert C. Thompson,* Assistant District Attorney, for District Attorney for the Plymouth District.

*David J. Apfel & Kunal Pasricha* for American Civil Liberties Union of Massachusetts & others.

*Kenneth J. Parsigian, Steven J. Pacini, & Amy E. Feinman* for Citizens for Juvenile Justice & others.

*John J. Barter* for Herby J. Caillot.

SPINA, J. This case is before us on a reservation and report from a single justice. We must determine the effect of the United States Supreme Court's recent decision in *Miller* v. *Alabama,* 132 S. Ct. 2455 (2012), on the sentencing of juvenile defendants[1] convicted of murder in the first degree under G. L. c. 265, § 1.[2] In *Miller,* the Supreme Court held that the mandatory imposition of sentences of life without parole on homicide offenders who were juveniles at the time of their crimes violates the bar against cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *Miller,* 132 S. Ct. at 2469. Additionally, we held today in *Diatchenko* v. *District Attorney for the Suffolk Dist., ante* 655, 658-659 (2013), that all sentences of life without parole for juvenile offenders,

---

[1] We use the term "juvenile defendants" here to refer to defendants who were under the age of eighteen on the date of their crimes.

[2] We acknowledge the amicus brief filed in support of Brown by American Civil Liberties Union of Massachusetts, Charles Hamilton Houston Institute for Racial Justice at Harvard Law School, Children's Law Center of Massachusetts, Citizens for Juvenile Justice, Juvenile Rights Advocacy Project at Boston College Law School, the Child Advocate for the Commonwealth of Massachusetts, Lawyers' Committee for Civil Rights and Economic Justice, Massachusetts Association of Court Appointed Attorneys, Massachusetts Bar Association, and seventeen law school professors from Massachusetts law schools; by Citizens for Juvenile Justice, Children's Law Center of Massachusetts, Children's League of Massachusetts, Home for Little Wanderers, and the Child Advocate for the Commonwealth of Massachusetts; by Juvenile Law Center, Campaign for the Fair Sentencing of Youth, Citizens for Juvenile Justice, Defender Association of Philadelphia, Massachusetts Alliance for Families, Massachusetts Society for the Prevention of Cruelty to Children, National Association of Criminal Defense Lawyers, National Legal Aid and Defenders Association, Public Defender Service for the District of Columbia, Youth Law Center, and the Child Advocate for the Commonwealth of Massachusetts; and by Herby J. Caillot. We also acknowledge the amicus brief filed in support of the Commonwealth by the district attorney for the Plymouth district.

whether mandatory or discretionary, violate art. 26 of the Massachusetts Declaration of Rights. We now hold that Brown is entitled to the benefit of *Miller* and *Diatchenko* and that he may not be sentenced to life without parole. He may only be sentenced to the lesser punishment under G. L. c. 265, § 2, of mandatory life in prison with the possibility of parole set pursuant to the parole eligibility statute in effect at the time of Brown's crime, G. L. c. 127, § 133A, as amended through St. 2000, c. 159, § 230, providing for parole eligibility in fifteen years.

1. *Background.* In August, 2012, Marquise Brown was tried and convicted in the Superior Court of murder in the first degree for the killing of Tyriffe Lewis along with three related weapons charges. The murder took place on June 20, 2009, when Brown was seventeen years old. While Brown was awaiting trial, the United States Supreme Court decided *Miller* v. *Alabama*, 132 S. Ct. 2455. In *Miller*, the Court held that mandatory sentences of life without parole for juvenile homicide offenders violate the cruel and unusual punishment clause of the Eighth Amendment. *Id.* at 2460. Under *Miller*, juvenile defendants convicted of homicide crimes may not be sentenced to life without parole unless the sentencing judge or jury is afforded an opportunity to consider the defendant's "youth and attendant characteristics" before determining that the defendant is the "rare juvenile offender whose crime reflects irreparable corruption." *Id.* at 2469, 2471.

Under the statutory sentencing scheme in Massachusetts, however, all defendants over the age of fourteen who are convicted of murder in the first degree must be sentenced to life without the possibility of parole.[3] The sentence is mandatory. Consequently, after the jury returned its verdict in Brown's case, the trial judge stayed sentencing at the request of both parties to permit briefing on the effect of *Miller* on the sentencing of Brown. The Commonwealth then made a motion requesting that the Superior Court

---

[3]See G. L. c. 119, § 72B ("If a person is found guilty of murder in the first degree committed on or after his fourteenth birthday and before his eighteenth birthday under the provisions of [G. L. c. 265, § 1,] the superior court shall commit the person to such punishment as is provided by law for the offense"); G. L. c. 265, § 2 ("No person shall be eligible for parole under [G. L. c. 127, § 133A,] while he is serving a life sentence for murder in the first degree . . .").

judge report questions of law to the Appeals Court under Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004), to clarify how *Miller* should be applied in Brown's case. The judge denied the Commonwealth's motion and in her order explained her planned sentencing approach. She first concluded that because the Legislature had not prescribed the procedures for the individualized sentencing hearing contemplated by *Miller* (a "*Miller* hearing"), the sentence of life without parole could not be imposed on Brown at all. The judge then concluded that the appropriate approach would be to apply principles of severability to construe the sentencing statutes as if excising the provisions that would be unconstitutional as applied to a juvenile defendant. What remained of the statute, then, was the punishment typically imposed for murder in the second degree: life with the possibility of parole. According to the judge, the date of parole eligibility for Brown would be set based on the version of G. L. c. 127, § 133A, in effect at the time of Brown's crime, which would make Brown parole eligible in fifteen years. G. L. c. 127, § 133A.[4]

In response to the judge's order, the Commonwealth requested that sentencing again be stayed while it sought relief under G. L. c. 211, § 3. The judge granted the Commonwealth's request without opposition. The single justice reserved and reported this entire matter without questions to the full court, and Brown has yet to be sentenced.

2. *Application of* Miller *and* Diatchenko. The United States Supreme Court has held that new decisional law must be applied to criminal prosecutions that are not yet final when the decision is issued. See *Griffith* v. *Kentucky*, 479 U.S. 314, 328 (1987). See also *Commonwealth* v. *Bray*, 407 Mass. 296, 299 (1990). Brown's criminal conviction is not final and appealable under Massachusetts law because he has not yet been sentenced. See *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex Offender Registry Bd.*, 459 Mass. 603, 621 (2011) ("In criminal cases, the final judgment is the sentence"); *Commonwealth* v. *Das-*

---

[4]The applicable version of G. L. c. 127, § 133A, as amended through St. 2000, c. 159, § 230, states in relevant part: "Every prisoner who is serving a sentence for life in a correctional institution of the commonwealth . . . except prisoners serving a life sentence for murder in the first degree, shall be eligible for parole, and the parole board shall, within sixty days before the expiration of fifteen years of such sentence, conduct a public hearing . . . ."

*calakis*, 246 Mass. 12, 19 (1923). Consequently, because Brown's criminal case was pending at the time the decision in *Miller* was issued, he is entitled to the benefit of *Miller*'s prohibition of mandatory sentences of life without parole for juveniles. Similarly, our decision today in *Diatchenko* also will apply to Brown's case. In *Diatchenko* we held that any sentence of life without parole for juveniles, whether mandatory or discretionary, violates art. 26. See *Diatchenko*, *supra* at 658-659. Thus, because Brown was a juvenile at the time of his crime, he may not be sentenced, whether automatically or after a sentencing hearing, to life without the possibility of parole. See *Miller*, 132 S. Ct. at 2460; *Diatchenko*, *supra*.

3. *Sentencing*. Following Brown's trial and conviction, the judge determined that *Miller* precluded applying to Brown the mandatory sentence of life without parole for murder in the first degree provided by G. L. c. 265, § 2. She further ruled that it would be improper for her to conduct a *Miller* hearing without guidance from the Legislature as to the specific contours of that proceeding.[5] Because *Miller* requires such a hearing prior to the imposition of a sentence of life without parole, the judge also determined that the only appropriate sentence for Brown would be the less severe penalty of life with the possibility of parole that is commonly imposed for murder in the second degree. Thus, in order to give effect to the discernible intent of the Legislature, the judge planned to impose on Brown as much of the sentencing scheme set forth in G. L. c. 265, § 2, and G. L. c. 127, § 133A, as would be permissible in light of *Miller*'s prohibition against mandatory sentences of life without parole for juveniles.

We agree with this approach. The Legislature expressly has adopted the principle of severability of statutory provisions. G. L. c. 4, § 6, Eleventh, inserted by St. 1983, c. 210 ("The

---

[5]We do not today decide whether sentencing judges have inherent authority to institute new sentencing procedures in response to new decisional law. Our holding today in *Diatchenko* v. *District Attorney for the Suffolk Dist.*, *ante* 655, 658-659 (2013), eliminates the need for us to determine whether sentencing judges may, in the absence of a statute, conduct a hearing pursuant to *Miller* v. *Alabama*, 132 S. Ct. 2455 (2012), prior to imposing a sentence of life without parole on a juvenile because all sentences of life without parole for juveniles are now unconstitutional in Massachusetts.

provisions of any statute shall be deemed severable, and if any part of any statute shall be adjudged unconstitutional or invalid, such judgment shall not affect other valid parts thereof"). This rule emerged at common law as a means of effectuating the Legislature's intent to the extent permitted by constitutional principles. See, e.g., *Commonwealth* v. *Chou*, 433 Mass. 229, 238 (2001); *Lowell* v. *Kowalski*, 380 Mass. 663, 670 (1980); *Del Duca* v. *Town Adm'r of Methuen*, 368 Mass. 1, 13 (1975). Additionally, our precedents establish that when a statutory provision is held unconstitutional, the valid portions of the statute should be preserved if the invalid provision is separable from the remainder of the statute. The unconstitutional provision is separable if the remaining provisions "stand alone," meaning that those provisions are not so intertwined with the invalid provision that the Legislature could not reasonably have enacted the constitutional portions without those held unconstitutional. *Peterson* v. *Commissioner of Revenue*, 444 Mass. 128, 137-138 (2005), quoting *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 540 (1982); *Commonwealth* v. *Petranich*, 183 Mass. 217, 220 (1903). Furthermore, we have recognized the general rule that where a statute is unconstitutional as applied to a particular class of cases, but not to other classes of cases, the statute may be preserved and held to apply only to those other classes so long as such a result appears to comport with the Legislature's general purposes. See *Ferguson* v. *Commissioner of Corps. & Taxation*, 316 Mass. 318, 322 (1944), quoting *Harrison* v. *Commissioner of Corps. & Taxation*, 272 Mass. 422, 426 (1930). See also 2 N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 44:18, at 659 (7th ed. 2009) ("[If] a single section of a statute contains language susceptible of applications, some of which are invalid[, t]he statute should be upheld if, after deletion of the invalid section, a workable statute remains"). Indeed, when the Legislature enacted G. L. c. 265, § 2, in its current form, the Legislature expressly declared its intent that the provisions of the act be severable, meaning that should any individual provisions of the act be held invalid, the remaining provisions should continue to be given effect. St. 1982, c. 554, § 7.

Here, one application of one portion of the sentencing scheme

for murder in the first degree has been rendered unconstitutional. The clauses in G. L. c. 265, § 2, and G. L. c. 127, § 133A, that except murder in the first degree from parole eligibility are unconstitutional as applied to juvenile defendants. See *Miller*, 132 S. Ct. at 2469; *Diatchenko*, *supra* at 667, 671. It is reasonable to conclude, however, that what remains of the sentencing scheme set forth in these statutes, specifically, the sentence of life in prison with the possibility of parole in no fewer than fifteen years, would have been enacted by the Legislature even without the provision imposing mandatory life without parole for murder in the first degree. Life with parole in no fewer than fifteen years is the next most severe sentence in Massachusetts imposed for the next most severe murder offense, murder in the second degree. See G. L. c. 265, § 2. When no harsher penalty is available, it is reasonable to conclude that the Legislature would impose the next most severe penalty provided in its sentencing scheme on defendants convicted of the most severe crime in that scheme. Additionally, in other circumstances we have permitted sentencing according to the next most severe lesser included offense for defendants convicted under criminal statutes deemed unconstitutional. For example, in *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 336-337, 352 (1983), where a portion of the criminal statute for trafficking in marijuana had been rendered void for vagueness, we allowed sentencing of the defendants according to the valid penalty statute for the next most severe lesser included possession offense for which the defendants had necessarily been convicted. Similarly, when the United States Supreme Court's decision in *Furman* v. *Georgia*, 408 U.S. 238 (1972), vacated certain death penalty sentences in Massachusetts, we held that defendants could be sentenced to life in prison, the next most severe penalty set forth by statute. See *Commonwealth* v. *Cassesso*, 368 Mass. 124, 125 (1975).

We acknowledge that severing the unconstitutional applications of G. L. c. 265, § 2, results in the functional equivalent of sentencing a defendant convicted of murder in the first degree to the punishment commonly imposed for murder in the second degree. However, we conclude that this result is preferable to either of the approaches suggested by the Commonwealth and Brown because the principles of severability help to ensure that

courts preserve as much as possible of the expressed intent of the Legislature while adhering to constitutional requirements. See *Lowell*, 380 Mass. at 670. The sentencing approaches suggested by the Commonwealth and Brown each go beyond the expressed intent of the Legislature and the holding of *Miller* and propose crafting new sentencing schemes virtually from whole cloth. We decline to engage in that sort of judicial lawmaking.

The Commonwealth argues that sentencing judges have the inherent authority both to conduct *Miller* hearings and to identify a "distinct disposition" for cases in which juvenile defendants are convicted of murder in the first degree. The Commonwealth would have judges draw on existing sentencing procedures under Mass. R. Crim. P. 28 (b), 378 Mass. 898 (1979), commonly utilized in sentencing for crimes in which the sentence is not mandatory,[6] along with the factors referenced in *Miller*,[7] to establish the substance and scope of a *Miller* hearing. The Commonwealth further contends that if, after conducting this new *Miller* hearing, the sentencing judge determines that parole eligibility for a juvenile convicted of murder in the first degree is appropriate, the judge has the authority to set the date of parole eligibility according to the nature of the crime and customary usage in the Commonwealth. Thus, according to the Commonwealth, in setting a juvenile offender's parole eligibility date for murder in the first degree, the judge need not be limited by the statute for the next most severe lesser included offense of murder in the second degree. Rather, the

---

[6]Rule 28 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 898 (1979), provides in relevant part: "Before imposing sentence the court shall afford the defendant or his counsel an opportunity to speak on behalf of the defendant and to present any information in mitigation of punishment." It is not clear from the record, however, that such hearings are required or commonly conducted for sentencing for crimes in which the sentence is mandated by statute. Indeed, we have held that defense counsel's failure to seek a hearing under rule 28 (b) is not a substantial miscarriage of justice where the sentence is automatic. See *Commonwealth* v. *Wilson*, 443 Mass. 122, 139-140 (2004).

[7]*Miller* identifies several factors that a sentencing court necessarily does not consider in a mandatory sentencing scheme for juvenile offenders, including the defendant's chronological age, family and home environment, circumstances of the homicide offense, and potential for rehabilitation. *Miller*, 132 S. Ct. at 2468.

Commonwealth argues, the sentencing judge may draw on the authority granted by the Legislature under G. L. c. 279, § 5, to set a parole eligibility date for a juvenile convicted of murder in the first degree as if the Legislature never had established a penalty for this crime. See G. L. c. 279, § 5 ("If no punishment for a crime is provided by statute, the court shall impose such sentence, according to the nature of the crime, as conforms to the common usage and practice in the commonwealth"). As a limit on this authority, the Commonwealth further suggests that sentencing judges could look to recent revisions to the parole eligibility statute that permit judges to set parole eligibility for murder in the second degree and other life-sentence crimes at fifteen to twenty-five years. Judges could use that range, the Commonwealth suggests, to justify setting the parole eligibility for juveniles convicted of murder in the first degree at twenty-five years or more. Ultimately, the Commonwealth contends that its approach would be more consonant with the Legislature's goal of a graduated sentencing scheme than would simply applying the next most severe penalty that has already been articulated by the Legislature.

Taken as a whole, however, the Commonwealth's approach would have sentencing judges creating an entirely new penalty scheme ad hoc. The Commonwealth would require sentencing judges to define the substantive parameters of a *Miller* hearing by drawing from existing criminal procedures that are not directly applicable to crimes with mandatory sentences along with dictum in *Miller* that identifies the factors that may be relevant to a hearing intended to determine only whether a juvenile may be sentenced to life *without* parole. See *Miller*, 132 S. Ct. at 2468. Further, the Commonwealth would permit sentencing judges to set parole eligibility for juvenile offenders at a date determined not by the Legislature but by the judge's own sense of what accords with the nature of the crime, using only as a starting point the limits set forth in a revised parole eligibility statute that does not apply to Brown at all.

It is the province of the Legislature to define crimes and set penalties in the first instance. See *Commonwealth* v. *Pyles*, 423 Mass. 717, 721 (1996), quoting *Weems* v. *United States*, 217

U.S. 349, 379 (1910) ("The function of the [L]egislature [in defining crimes and their punishments] is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety"). See also *Cepulonis* v. *Commonwealth,* 384 Mass. 495, 497 (1981), and cases cited. Although we acknowledge courts' statutory authority under G. L. c. 279, § 5, to impose sentences when the Legislature has not established the punishment for a particular crime, we prefer to adhere to our strong policy of preserving existing legislative enactments when certain provisions, or applications of those provisions, have been rendered unconstitutional. See *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 91 (1978). Indeed, in this case the Legislature has not been silent as to the appropriate punishments for murder crimes. It has enacted a comprehensive sentencing scheme that remains valid as applied to adults. Although one application of one portion of its sentencing scheme has been rendered unconstitutional, we seek to preserve as much as possible of the scheme the Legislature has actually established. See *id.*; *Ferguson,* 316 Mass. at 322. In our view, applying the doctrine of severability to the existing sentencing statute for murder crimes adheres much more closely to the Legislature's expressed intent than drawing on the variety of sources the Commonwealth recommends.

Our concern for judicial law-making in this area also informs our rejection of Brown's proposed sentencing approach. Brown agrees that it is the role of the Legislature, not the courts, to establish the procedures required for a *Miller* hearing. Brown goes further, however, to argue that despite *Miller's* narrow holding, which prohibits only the automatic imposition of sentences of life without parole on juvenile homicide offenders, when taken as a whole, *Miller* calls for multiple discretionary sentencing options in all cases in which a juvenile is sentenced to a prison term. Brown also argues that art. 26 of the Massachusetts Declaration of Rights and its bar against cruel or unusual punishment prohibits mandatory sentencing in all cases for juveniles. Thus Brown contends that the only appropriate sentence to which he may be subjected is the sentence for the

next most severe homicide offense that provides a range of discretionary sentencing options: the voluntary manslaughter penalty under G. L. c. 265, § 13. This statute provides that a defendant convicted of manslaughter may not be sentenced to more than twenty years in prison and thereby permits sentencing judges to exercise discretion in setting a particular defendant's prison term.

We disagree with Brown's proposed sentencing approach, however, because neither *Miller* nor *Diatchenko* precludes mandatory sentencing for juveniles in all circumstances. The holding of *Miller* was cabined specifically to the need for discretion in imposing the "particular penalty" of life without parole. *Miller*, 132 S. Ct. at 2471 ("Our decision . . . mandates only that a sentencer follow a certain process . . . before imposing *a particular penalty*" [emphasis added]); *id.* at 2475 ("'[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing *the harshest possible penalty* for juveniles" [emphasis added]). Indeed, the Court's application of its individualized sentencing line of precedents to a nondeath-penalty sentence was based on the reasoning that life without parole is uniquely akin to the death penalty in that both punishments condemn the defendant to die in prison. *Id.* at 2466, 2467. Thus, the reasoning of *Miller* does not necessarily extend to mandatory sentences that afford the possibility of release. *Id.* at 2466, quoting *Graham* v. *Florida*, 560 U.S. 48, 69 (2010) ("Life-without-parole terms . . . 'share some characteristics with death sentences that are shared by no other sentences' "). Furthermore, the State sentencing statutes at issue in *Miller* both set forth mandatory minimum life sentences. See *id.* at 2461, 2463, citing Ark. Code Ann. § 5-4-104(b) (1997) and Ala. Code §§ 13A-5-40(9), 13A-6-2(c) (1982). If the Court in *Miller* had intended to invalidate all mandatory life sentences for juveniles, it could have reached that issue. Instead, *Miller*'s holding was decidedly narrow, requiring discretionary sentencing of juveniles under the Eighth Amendment only when considering imposition of the State's "harshest possible penalty" for juveniles: life without parole. *Miller*, *supra* at 2469, 2475. Indeed, if the Supreme Court had in fact held that all mandatory life sentences for juveniles, or all mandatory sentences of any

length, violated the Eighth Amendment, Chief Justice Roberts's dissent would not have criticized the Court's holding as establishing a principle that could in the future justify prohibiting all mandatory sentences for juveniles.[8]

Additionally, to interpret *Miller* as broadly as Brown advocates would upset a host of statutory punishment schemes in the Commonwealth that incorporate mandatory minimum sentences that may be applied to defendants who were juveniles at the time of their crimes.[9] See, e.g., G. L. c. 94C, § 32E (*a*) (1) (punishment for trafficking in marijuana between fifty and one hundred pounds: not less than two and one-half years in State prison); G. L. c. 265, § 17 (punishment for armed robbery committed while masked or armed with firearm: not less than five years in State prison); G. L. c. 265, § 22B (*c*) (punishment for rape of child by force or threat of force while victim is tied, bound, or gagged: not less than fifteen years in State prison); G. L. c. 266, § 14 (punishment for burglary committed while armed with firearm: not less than fifteen years in State prison); G. L. c. 269, § 11B (punishment for possession of firearm with serial number removed: not less than two and one-half years in State prison).

Although *Miller* certainly emphasizes that juveniles are "constitutionally different" for the purposes of sentencing, it does so not to set forth the rule that juvenile sentencing must always be discretionary but to support its rationale for holding that a mandatory penalty of life without parole, when imposed on a juvenile, can be disproportionate in a sense that contravenes

---

[8]"The principle behind today's decision seems to be only that because juveniles are different from adults, they must be sentenced differently. . . . There is no clear reason that principle would not bar all mandatory sentences for juveniles, or any juvenile sentence as harsh as what a similarly situated adult would receive." *Miller*, 132 S. Ct. at 2482 (Roberts, C.J., dissenting).

[9]Under G. L. c. 119, § 72A, defendants who commit a crime prior to their eighteenth birthday but are not apprehended until after their nineteenth birthday may be prosecuted in the Superior or District Court if a Juvenile Court judge determines that the interests of the public require that the delinquency complaint be dismissed from the Juvenile Court and a criminal complaint be issued instead. G. L. c. 119, § 72A, as amended through St. 2013, c. 84, § 23. Such a determination by a Juvenile Court judge could subject defendants who were juveniles at the time of their crimes to a host of punishments involving mandatory minimum sentences. See *id.*

the Eighth Amendment. *Miller,* 132 S. Ct. at 2464, 2465-2466 ("By removing youth from the balance — by subjecting a juvenile to the same life-without-parole sentence applicable to an adult — these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender"). Thus, according to *Miller*'s reasoning, only when a juvenile is sentenced to a "forfeiture that is irrevocable" is discretionary sentencing a constitutional requirement. *Id.* at 2466, 2469. Furthermore, although our holding in *Diatchenko* also acknowledges children's unique potential for rehabilitation and reform, our holding does not prohibit the imposition of life sentences, even mandatory ones, on juvenile defendants, so long as they are made eligible for parole. See *Diatchenko, supra* at 671. We disagree with Brown's argument that the only constitutionally permissible sentencing scheme for a juvenile defendant convicted of murder in the first degree is the discretionary sentencing range set forth in the voluntary manslaughter statute, G. L. c. 265, § 13, and we leave for another day the broader question whether discretion is constitutionally required in all instances of juvenile sentencing.

Therefore, we conclude that the sentencing judge's proposed application of severability principles to G. L. c. 265, § 2, in order to sentence Brown within the confines of *Miller* was correct, and we emphasize the importance of "avoid[ing] judicial legislation in the guise of new constructions to meet real or supposed new popular viewpoints, preserving always to the Legislature alone its proper prerogative of adjusting the statutes to changed conditions." *Commonwealth* v. *A Juvenile,* 368 Mass. 580, 595 (1975), quoting *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 548 (1945). Thus, Brown, who has been convicted of murder in the first degree, must be sentenced under G. L. c. 265, § 2. However, the first half of the fourth sentence of this statutory provision, which excepts convictions of murder in the first degree from parole eligibility, may not be applied to Brown under *Miller* and *Diatchenko*. What remains of G. L. c. 265, § 2, for Brown, then, is a mandatory sentence of life in prison with the possibility of parole. This punishment is equivalent to the sentence provided for murder in the second degree under

G. L. c. 265, § 2. Therefore, as in the case of convictions of murder in the second degree, in setting the date of parole eligibility, sentencing judges must refer to the parole eligibility statute, G. L. c. 127, § 133A. Here, too, judges must utilize the doctrine of severability and construe the statute as if omitting the exception for parole eligibility for murder in the first degree when applying the statute to juveniles. Thus, juveniles like Brown who are convicted of murder in the first degree shall be eligible for parole within the time period provided under G. L. c. 127, § 133A.[10]

4. *Remaining issues.* We acknowledge that applying G. L. c. 265, § 2, and G. L. c. 127, § 133A, in the manner we have described is an imperfect solution to our invalidation of the sentencing scheme for murder in the first degree as applied to juvenile defendants. Indeed, we are cognizant of the potential inequalities in sentencing that may arise as a result of our holding today, particularly as our decision may be applied in the context of the Legislature's amendment to the parole eligibility statute. See G. L. c. 127, § 133A, as amended through St. 2012, c. 192, §§ 37-39. Under G. L. c. 127, § 133A, as amended by St. 2012, c. 192 (Crime Bill), sentencing judges

---

[10]Brown must be sentenced according the version of the parole eligibility statute in effect on the date of his crime, G. L. c. 127, § 133A, as amended through St. 2000, c. 159, § 230, which will result in a mandatory sentence of life in prison with the possibility of parole in fifteen years. This statute was amended by St. 2012, c. 192, §§ 37-39, to provide discretion in sentencing defendants convicted of murder in the second degree to life in prison with the possibility of parole between fifteen and twenty-five years. See G. L. c. 279, § 24, as amended through St. 2012, c. 192, § 46. This discretionary range will not apply to Brown, however. As a general rule, a statute that enhances the possible penalty for a crime committed when an earlier version of the statute was in effect may never apply retroactively to a criminal defendant. See art. I, § 9, of the United States Constitution; art. 24 of the Massachusetts Declaration of Rights; *Commonwealth* v. *Bargeron*, 402 Mass. 589, 590 591 (1988), citing *Calder* v. *Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (listing four types of ex post facto laws, including "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" [emphasis omitted]). Because the 2012 amendment to G. L. c. 127, § 133A, permits sentencing a defendant to life with the possibility of parole in up to twenty-five years, it enhances the potential penalty annexed to Brown's crime. Thus, any imposition of the current version of the statute on Brown, whose crime was committed in June, 2009, would be barred as an ex post facto law.

may set parole eligibility between fifteen and twenty-five years for an offender convicted of a mandatory life-sentence crime committed on or after August 2, 2012. G. L. c. 127, § 133A, as amended through St. 2012, c. 192, §§ 37-39; G. L. c. 279, § 24, as amended through St. 2012, c. 192, § 46. As a result of our decision today, in the case of juvenile defendants convicted of homicide crimes committed after August 2, 2012, both murder in the first degree and murder in the second degree are mandatory life-sentence crimes with parole eligibility to be set between fifteen and twenty-five years. Thus, until the statutory sentencing scheme is further amended, sentencing judges effectively will be required to apply one discretionary parole eligibility range to juveniles convicted of two different crimes. This requirement could well give rise to disparate sentencing for juveniles convicted of murder in the first degree and murder in the second degree. For example, a juvenile defendant could be convicted, whether by trial or guilty plea, of murder in the *second* degree for a killing committed after August 2, 2012, when the Crime Bill took effect. The judge could then exercise the discretion permitted by the new version of the parole eligibility statute and set that juvenile's parole eligibility at a time longer than the minimum term — perhaps twenty years. Simultaneously, another juvenile defendant could be convicted of murder in the *first* degree for a killing committed after August 2, 2012. There, the judge would first apply severability principles to G. L. c. 127, § 133A, and omit the exception to parole eligibility for juveniles convicted of murder in the first degree. The judge could then exercise the discretion permitted by the statute and set the date of parole eligibility for this juvenile at the minimum term of fifteen years. Both of these applications of the statute could be proper, but as a result of applying the same discretionary parole-eligibility range to these two defendants, a juvenile convicted of the lesser crime of murder in the second degree could be sentenced to a lengthier minimum term than the juvenile convicted of the more severe crime of murder in the first degree. Although we do not go so far as to determine whether such a circumstance would constitute a violation of, for example, art. 26 of the Massachusetts Declaration of Rights or the equal protection clause of art. 1, this scenario admittedly raises such concerns. Consequently, we em-

phasize that the application of severability principles in sentencing juveniles like Brown is a temporary remedy — one that we hope the Legislature will soon address by creating a new, constitutional sentencing scheme for juveniles convicted of homicide crimes.[11]

5. *Conclusion.* We remand this case to the county court for entry of a judgment denying the Commonwealth's petition for relief and remanding this case to the Superior Court for sentencing proceedings consistent with this opinion.

*So ordered.*

---

[11]We leave to the sound discretion of the Legislature the specific contours of a new sentencing scheme for juveniles convicted of homicide crimes, including the length of any mandatory prison term or the minimum and maximum term of any discretionary sentencing or parole-eligibility ranges. We emphasize, however, that a constitutional sentencing scheme for juvenile homicide defendants must take account of the spirit of our holdings today here and in *Diatchenko*, and avoid imposing on juvenile defendants any term so lengthy that it could be seen as the functional equivalent of a sentence of life without parole. See, e.g., *People* v. *Caballero*, 282 P.3d 291, 295 (Cal. 2012) (sentence to minimum prison term that exceeds juvenile defendant's natural life expectancy violates Eighth Amendment's bar against cruel and unusual punishment); *State* v. *Ragland*, 836 N.W.2d 107, 111, 121-122 (Iowa 2013) (*Miller* applies to juvenile sentences that are "functional equivalent" of life without parole, and sentence of life with parole eligibility only after sixty years was functional equivalent of life without parole); *State* v. *Null*, 836 N.W.2d 41, 45, 71 (Iowa 2013) (mandatory seventy-five-year sentence resulting from aggregation of two mandatory sentences that permitted parole eligibility only after fifty-two and one-half years for juvenile was "such a lengthy sentence" that it was "sufficient to trigger *Miller*-type protections").