NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12097

COMMONWEALTH  vs.  MARCUS G. PETERSON.


Suffolk.    October 5, 2016. - January 3, 2017.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, & Budd, JJ.


Controlled Substances.  "School Zone" Statute.  Practice, Criminal, Dismissal.



Complaint received and sworn to in the Central Division of the Boston Municipal Court Department on June 23, 2014.

A motion to dismiss was heard by Eleanor C. Sinnott, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Matthew T. Sears, Assistant District Attorney (Amanda Read Cascione, Assistant District Attorney, with him) for the Commonwealth.
J. Scott Lauer, Committee for Public Counsel Services, for the defendant.


GAZIANO, J.  General Laws c. 94C, § 32J, the so-called school zone statute, punishes individuals who commit certain enumerated drug offenses within 300 feet of a school or one

hundred feet of a public park or playground.  In 1992, we determined that the school zone statute does not violate a defendant's due process rights, but cautioned that "[t]here may be extraordinary circumstances shown in some cases which would make it unfair to find guilt under § 32J."  Commonwealth v. Alvarez, 413 Mass. 224, 228, 230 n.5 (1992).  This case tests the bounds of school zone statute liability.  The issue presented is whether the statute applies to a defendant who is located momentarily within one hundred feet of a public park solely because he is a passenger in a motor vehicle that is driven on a public roadway past the park and, fortuitously, stops at a red light.  We conclude that application of G. L. c. 94C, § 32J, to the defendant, in the particular facts and circumstances of this case, would be overreaching.  The park zone charge, therefore, must be dismissed.

Background.  The following facts are drawn from the police report; they are uncontested for purposes of this interlocutory appeal.  On May 12, 2014, at approximately 5:45 P.M., three police officers assigned to the Boston police department's youth violence strike force were on patrol in the Dorchester section of Boston in a police cruiser.  Driving down Ceylon Street, they observed a white Chevrolet Cruze automobile in front of them, stopped at a red light at the intersection of Ceylon Street and Columbia Road.  Immediately adjacent to Ceylon Street, at that

intersection, is a public park called Ceylon Park.  While traveling along Ceylon Street and when stopped at the light, the Chevrolet was within one hundred feet of the park.

There were four people in the vehicle, including the defendant, who was the front seat passenger.  The three officers learned through their onboard computer that the vehicle's inspection sticker had expired.  When the light turned green, the vehicle proceeded through the intersection.  The officers activated their lights and sirens and stopped the vehicle a short distance away, at the intersection of Columbia Road and Hamilton Street, at which point the vehicle was no longer within one hundred feet of Ceylon Park.

When asked for his license and registration, the driver told police that he did not have a driver's license or registration for the vehicle.  He provided a name and birth date that the officers later discovered was false.  The officers also obtained names and dates of birth from the passengers, none of whom was wearing a seat belt.  Two of the officers returned to the police cruiser to verify this information.

The officer who remained at the vehicle noticed the defendant remove a clear plastic bag from his left front pants pocket and drop it on the floorboard behind him, in front of a female passenger's feet.  The officer opened the front passenger door to investigate, and a struggle ensued when the defendant

pushed him away. When they saw the door being opened, the other officers returned from the cruiser and assisted in removing the defendant from the vehicle. He was handcuffed and seated on the ground, and the other occupants were ordered to get out of the vehicle. The officers searched the vehicle and found the clear plastic bag. It contained forty individually wrapped "bumps" of what appeared to be "crack" cocaine, and six pills that appeared to be a prescription drug. The officers arranged to have the vehicle towed and conducted an inventory search prior to towing. In a brown leather bag on the front passenger's side floorboard, they discovered a loaded, semiautomatic handgun. After the discovery of the weapon, the other occupants of the vehicle were handcuffed for officer safety. The rear seat passengers were given warnings about the seat belt violations and released, and the driver was arrested for unlawful possession of a firearm.

The defendant was arrested and charged with a number of firearm offenses, resisting arrest, assault and battery on a police officer, and three narcotics offenses: possession of a class B controlled substance, in violation of G. L. c. 94C, § 34; possession of a class B controlled substance with intent to distribute, in violation of G. L. c. 94C, § 32A; and committing a drug offense within one hundred feet of a public park, in violation of G. L. c. 94C, § 32J. The defendant sought to dismiss the park zone charge, arguing that G. L. c. 94C,

§ 32J, is unconstitutional as applied to him, and that prosecution in these circumstances would violate his right to due process, "given that [he] was a passenger in a vehicle driven by another individual and his presence within [one hundred] feet of a park zone was entirely fortuitous" and not the sort of circumstance the Legislature intended to reach in enacting G. L. c. 94C, § 32J.  After a nonevidentiary hearing, the judge allowed the motion for the reasons argued by the defendant.  The Commonwealth filed a timely notice of appeal, and we transferred the case from the Appeals Court on our own motion.

Discussion.  The Legislature is vested with unquestioned authority to define crimes and set penalties.  See Commonwealth v. Jackson, 369 Mass. 904, 922 (1976).  "The function of the [L]egislature [in defining crimes and their punishments] is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety."  Commonwealth v. Brown, 466 Mass. 676, 684-685 (2013), quoting Weems v. United States, 217 U.S. 349, 379 (1910).  This power includes the authority to create strict liability criminal offenses whereby the Commonwealth is relieved of its obligation to prove an intent to commit a crime.  See Commonwealth v. Knap, 412 Mass. 712, 715 (1992).

General Laws c. 94C, § 32J, comprises, in part, an aspect of strict liability.[1]  The only proof of intent required under § 32J is the intent required to commit the underlying drug offense.  No additional proof of a defendant's knowledge or intent with respect to the boundaries of a school zone is required.  See Commonwealth v. Roucoulet, 413 Mass. 647, 650 (1992); Alvarez, 413 Mass. at 229.  Indeed, the statute provides explicitly that "[l]ack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of

---

[1] General Laws c. 94C, § 32J, provides in relevant part:

"Any person who violates the provisions of [G. L. c. 94C, §§ 32, 32A-32F, or 32I,] while in or on, or within 300 feet of the real property comprising a public or private accredited preschool, accredited headstart facility, elementary, vocational, or secondary school if the violation occurs between [5 A.M.] and midnight, whether or not in session, or within one hundred feet of a public park or playground shall be punished by a term of imprisonment in the state prison for not less than two and one-half nor more than fifteen years or by imprisonment in a jail or house of correction for not less than two nor more than two and one-half years.  No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of two years.  A fine of not less than [$1,000] nor more than [$10,000] may be imposed but not in lieu of the mandatory minimum two year term of imprisonment as established herein.  In accordance with the provisions of [G. L. c. 279, § 8A,] such sentence shall begin from and after the expiration of the sentence for violation of [the predicate offense].

"Lack of knowledge of school boundaries shall not be a defense to any person who violates the provisions of this section."

this section."[2]  G. L. c. 94C, § 32J.  Thus, the penalty applies regardless of whether a defendant intended to distribute drugs in a particular school zone or planned to do so elsewhere, and was present in the school zone only momentarily.  See Alvarez, supra.  See, e.g., Commonwealth v. Bradley, 466 Mass. 551, 556 (2013) (school zone conviction does not require proof of "any additional wrongdoing by the defendant; it is enough that the drug violation occurred within a school zone, regardless whether the defendant knew he was within a school zone"); Roucoulet, supra at 650-651, quoting State v. Ivory, 124 N.J. 582, 593 (1991) ("one need only take out the tape measure to see if [the school zone provision of § 32J] has been violated").

In Alvarez, 413 Mass. at 228-230, we concluded that G. L. c. 94C, § 32J, does not violate due process of law notwithstanding that the statute expressly "removes guilty knowledge as to one element of the offense, namely the school boundaries element."  We noted that the Legislature has "broad power to define and limit the mens rea element of criminal offenses" (citation omitted), id. at 229, and permissibly did so in drafting the school zone statute.  We cautioned, however,

---

[2] We assume for purposes of discussion, without deciding, that this language applies to park and playground boundaries as well as to school boundaries.  Given the result we reach, we need not resolve the defendant's alternate argument that the statute imposes strict liability only for school zone violations, and not for violations near parks or playgrounds.

that "[t]here may be extraordinary circumstances shown in some cases which would make it unfair to find guilt under [G. L. c. 94C,] § 32J."[3]  Id. at 230 n.5.

At issue in this appeal is the extent of this strict liability aspect of G. L. c. 94C, § 32J.  Specifically, we are asked to determine whether the Legislature possibly could have intended the school zone statute to apply to someone like the defendant, who, albeit in possession of drugs with intent to distribute, does nothing more than simply travel as a passenger in a motor vehicle on a public roadway past a school, park, or playground.

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative

---

[3] In discussing a hypothetical example of an impermissible, overbroad application, we pointed to United States v. Coates, 739 F. Supp. 146, 152-153 (S.D.N.Y. 1990).  In that case, a United States District Court judge dismissed Federal school zone charges brought against two defendants who had boarded an underground train at Penn Station carrying a large quantity of cocaine.  Id. at 153.  The defendants were within 1,000 feet of a school located in an office complex adjoining the train station.  Id.  The judge explained, "To charge a schoolyard count in these circumstances stretches the scope of the statute beyond logical and acceptable bounds. . . .  To posit liability under [the Federal school zone act] in these fortuitous circumstances is simply overreaching."  Id.

intent." Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). That said, we do not adhere blindly to a literal reading of a statute if doing so would yield an "absurd" or "illogical" result (citations omitted). Commonwealth v. Parent, 465 Mass. 395, 409-410 (2013). Commonwealth v. Rahim, 441 Mass. 273, 278 (2004). See Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982) ("We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable"); 2A N.J. Singer & S. Singer, Statutes and Statutory Construction § 46:7 (7th ed. rev. 2014) ("if the literal text of an act is inconsistent with legislative meaning or intent, or leads to an absurd result, a statute is construed to agree with the legislative intention"). See also Black's Law Dictionary 11-12 (10th ed. 2014) (defining "absurdity" as "being grossly unreasonable" and "[a]n interpretation that would lead to an unconscionable result, esp. one that . . . the drafters could not have intended").

The Commonwealth argues that the phrase "within one hundred feet of a public park or playground" must be read and applied literally, to encompass an individual who is physically present within one hundred feet of a park in essentially any manner, for any reason, and for any period of time. We do not agree. A literal application, as urged by the Commonwealth, could sometimes "yield an absurd or unworkable result" (citation

omitted), Commonwealth v. Perella, 464 Mass. 274, 276 (2013), as it does here. Under the Commonwealth's reading, for example, a drug offender traveling on a Massachusetts highway, who sped past a roadside public park at sixty-five miles per hour for a matter of seconds, would be subjected to the severe statutory penalty for a park zone violation.[4]

We see nothing in the history or purpose of the statute that justifies such an extreme and excessive result. It is well settled, through legislative history and two decades of decisional law examining that history, that the purpose of G. L. c. 94C, 32J, is to protect children from the harmful impact of drug dealing. See Commonwealth v. Bell, 442 Mass. 118, 124-125 (2004) (intent of Legislature to provide drug-free school zones). Then Governor Michael Dukakis proposed the legislation "[in order to make] every school and surrounding community safe from the destructive impact of drug trafficking and drug abuse." Id., quoting Roucoulet, 413 Mass. at 651 n.7. See Bradley, 466 Mass. at 556 (when first enacted in 1989, legislative purpose of G. L. c. 94C, 32J, was to protect school children from drug dealers by creating drug-free school zones).

---

[4] The fact that the defendant in this case was traveling on a local street and not on a highway is not by itself dispositive. The critical fact is that he was in a vehicle being driven past the park, which stopped by happenstance at a red light, and that this was the sole basis alleged by the Commonwealth for his coming within the scope of the statute.

More recently, recognizing the statute's uneven impact on people who live in urban areas, the Legislature amended the school zone statute to reduce the school zone radius from 1,000 feet to 300 feet, and to limit the time period in which a violation may occur to between the hours of 5 A.M. and midnight. See St. 2012, c. 192, §§ 30, 31.  The Legislature observed that the broader 1,000-foot radius created "an unfair disparate impact on those residing in urban areas and, consequently, on minority residents, and [that] the broader radius did not better protect school children from drug dealers."  Bradley, 466 Mass. at 559.  The newly created time restriction for violations, of course, excludes hours of the day (midnight to 5 A.M.) when there is little practical chance that children will be in or near schools and parks.

Given the Legislature's stated reasons for enacting the statute, we do not think the Legislature possibly intended G. L. c. 94C, § 32J, to apply to an individual who merely passes momentarily by a school or a park while traveling on a public roadway in an automobile driven by another person, which would not have stopped but for a change in a traffic signal.  In these circumstances, the defendant's physical appearance in the park zone was by chance.  There is no suggestion that he engaged, attempted to engage, or intended to engage in any type of drug transaction within the protected area, or had any other type of

connection whatsoever to the protected area; and there is no evidence that his momentary presence as he passed by the area in these circumstances posed any real or potential risk to children or anyone else in the park.  Applying the statute literally in these particular circumstances thus would not serve the legitimate goals of the statute.

In sum, "[w]e do not believe the . . . Legislature intended the [school zone] statute to apply to an individual not apprehended within the school [or park] zone and where uninterrupted passage in an automobile through the school [or park] zone was fortuitous.  As stated in [United States v.] Coates, [739 F. Supp. 146, 152-153 (S.D.N.Y. 1990),] a contrary holding would stretch the statute beyond logical and acceptable bounds.  We will not conclude the [L]egislature intended such an unreasonable result."  State v. Barnes, 275 Kan. 364, 375 (2003).

We emphasize that this ruling is limited to the specific facts presented here and to the predicate offense of possession of a controlled substance with intent to distribute.  It is not counter to, and does not alter, our decisions in Commonwealth v. Roucoulet, 413 Mass. 647 (1992), and Commonwealth v. Alvarez, 413 Mass. 224 (1992), or the Appeals Court's decision in Commonwealth v. Labitue, 49 Mass. App. Ct. 913 (2000).  Mindful that the "absurd results doctrine must be used sparingly,"

2A N.J. Singer & S. Singer, Statutes and Statutory Construction § 46:7 at 279 (7th ed. rev. 2014), we hold only that the application of G. L. c. 94C, § 32J, to this defendant in the particular facts and circumstances of this case would be overreaching.

                    Order allowing motion to
                     dismiss affirmed.