NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11828

COMMONWEALTH  vs.  LOUIS R. COSTA.


Suffolk.     May 5, 2015. - July 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.



Constitutional Law, Sentence, Cruel and unusual punishment,
     Parole.  Due Process of Law, Sentence, Parole.  Parole.
     Homicide.  Practice, Criminal, Sentence, Parole, Capital
     case.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on November 28, 2014.

     The case reported by Hines, J.



     David J. Apfel (Katherine C. Sadeck with him) for the
defendant.
     John P. Zanini, Assistant District Attorney, for the
Commonwealth.
     Benjamin H. Keehn, Committee for Public Counsel Services,
for Committee for Public Counsel Services & another, amici
curiae, submitted a brief.
     John H. Cunha, Jr., & Charles Allan Hope, for James
Costello, amicus curiae, submitted a brief.


     LENK, J.  In Miller v. Alabama, 132 S. Ct. 2455, 2460

(2012) (Miller), the United States Supreme Court held that the

imposition of mandatory life sentences without the possibility of parole on individuals who were under the age of eighteen at the time of their crimes (juvenile offenders) violates the Eighth Amendment to the United States Constitution's prohibition on "cruel and unusual punishments."  Approximately one year later, in Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 666 (2013) (Diatchenko), S.C., 471 Mass. 12 (2015), this court held that Miller applies retroactively to cases on collateral appeal.  We also went beyond the Court's holding in Miller and determined that art. 26 of the Massachusetts Declaration of Rights, which prohibits "cruel or unusual punishments," bars even the discretionary imposition of a sentence of life without the possibility of parole on juvenile offenders.  Id. at 671.

Prior to our decision in Diatchenko, juvenile offenders convicted of murder in the first degree in the Commonwealth received mandatory sentences of life without the possibility of parole, like adult offenders convicted of the same offense.  Id. at 667.  Our decision in Diatchenko invalidated the sentences of all juvenile offenders sentenced under that sentencing scheme, to the extent to which those sentences rendered the offenders ineligible for parole.  Id.  In Diatchenko and Commonwealth v. Brown, 466 Mass. 676 (2013) (Brown), decided on the same day as Diatchenko, we determined that the proper remedy was to excise

from the sentencing statute, when applied to juvenile offenders, the provision regarding parole ineligibility.  Diatchenko, 466 Mass. at 673.  Brown, 466 Mass. at 680-689.  As a result, a sentencing statute prescribing life without the possibility of parole in effect became a statute prescribing, for juvenile offenders, life with the possibility of parole after fifteen years.  Diatchenko, 466 Mass. at 673-674.

This case calls upon us to determine the effect of Diatchenko and Brown on the sentences of juvenile offenders who, unlike the defendants in those cases, were sentenced to multiple consecutive sentences of life without the possibility of parole prior to those decisions.  The defendant was convicted of two counts of murder in the first degree, and was sentenced in 1994 to two consecutive sentences of life without the possibility of parole.  At the time of his sentencing, the distinction between consecutive and concurrent sentences had little practical impact.  Our decisions in Diatchenko and Brown changed that.  If the defendant's sentences are modified in light of Diatchenko and Brown but remain consecutive, he will be eligible for parole after thirty years (the aggregate of two minimum terms of life with eligibility for parole after fifteen years).  If his sentences are rendered concurrent, he will be eligible for parole after fifteen years; because he has already served approximately twenty-eight years, he would be eligible for

parole immediately.  We conclude that a trial court judge, in resentencing a juvenile offender originally sentenced to multiple consecutive terms of life without the possibility of parole, may conduct a sentencing hearing to consider resentencing the juvenile offender to concurrent terms.[1]

1.  Background.  The defendant's two murder convictions stem from his role in the shooting deaths of two individuals in a public park on a February evening in Boston in 1986.  At the time, the defendant was sixteen years old.  He participated in the shooting with two other individuals, who were then adults.

The defendant initially was charged as a juvenile.  The case was then transferred to the Superior Court.  The defendant was tried alongside an adult codefendant and convicted on both indictments.  This court, concluding that the defendant's right under the Sixth Amendment to the United States Constitution to confront a witness against him had been violated, vacated the convictions and remanded for a new trial.  See Commonwealth v. DiBenedetto, 414 Mass. 37, 39 (1992).  The defendant's second trial occurred in 1994.  The defendant again was tried alongside an adult codefendant, and both were convicted of two counts of murder in the first degree.  The jury's verdict, however,

---

[1] We acknowledge the amicus briefs submitted on behalf of the defendant by the Committee for Public Counsel Services and the Child Advocate of the Commonwealth of Massachusetts, and by James Costello.

distinguished between the defendant and his codefendant.  While the codefendant was found guilty of the murders based on both a premeditation theory and an extreme atrocity or cruelty theory, the defendant was convicted only as a joint venturer on the deliberate premeditation theory.  This court affirmed the convictions.  See Commonwealth v. DiBenedetto, 427 Mass. 414, 416 (1998).

Pursuant to the then-applicable sentencing statutes, the defendant was sentenced to two terms of life without the possibility of parole.  At the defendant's sentencing hearing, the Commonwealth urged, based on "the nature . . . of the crimes committed," that the defendant's sentences be imposed consecutively.  Defense counsel, citing the defendant's "youth at the time these offenses took place" and his capacity for rehabilitation, urged that the sentences be imposed concurrently.  The sentencing judge suggested that the difference between a consecutive and concurrent sentence was "somewhat symbolic," in light of the mandatory sentence of life without the possibility of parole.  Defense counsel countered that whether the sentences were imposed consecutively or concurrently could have an impact on the defendant's treatment while incarcerated.  Ultimately, the sentencing judge, noting that the evidence showed that "the actions here were tantamount to execution by firing squad," concluded that consecutive

sentences of life without the possibility of parole were appropriate.

In the wake of this court's decisions in Diatchenko and Brown, the defendant moved for resentencing under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). A different judge of the Superior Court (the original sentencing judge having retired) concluded that, in light of those decisions, each of the defendant's original sentences of life without the possibility of parole should be converted into a sentence of life with parole eligibility after a minimum term of fifteen years. The judge also determined that the original sentencing judge "likely would not have considered the impact of adolescent brain development in . . . determining whether to impose concurrent sentences or consecutive life sentences for the crimes [of] which the defendant was convicted," given the "emerging" character of the research. The judge accordingly concluded that the defendant was entitled to a resentencing proceeding on the issue whether the sentences should be imposed consecutively or concurrently.

The judge outlined several aspects of the evidentiary hearing that his decision contemplated. He indicated that he did not see a need for general testimony regarding scientific research into adolescent cognition and brain development, noting that the basic insights derived from such research are already

well established in the case law.  Without circumscribing the admissible evidence he would consider, the judge indicated that it might be appropriate to consider specific testimony concerning the defendant's "level of cognition at the time of the commission of this crime," and suggested that the defendant might offer evidence regarding the psychological examinations conducted prior to the hearing regarding the defendant's transfer from the Juvenile Court to the Superior Court.

The Commonwealth petitioned a single justice of the county court for relief pursuant to G. L. c. 211, § 3, arguing that the judge's order "improperly intrudes upon the lawful sentences previously imposed upon th[e] defendant."  The single justice reserved and reported the case, observing that the case "raises the important and novel question, not specifically addressed in Diatchenko or Brown, whether:  (1) a trial court judge in imposing a sentence in accordance with and pursuant to Diatchenko and Brown, may amend that aspect of the original sentence that imposed consecutive life sentences to impose concurrent life sentences . . . and, (2) if so, what shall be the nature of the proceeding required to make that determination."[2]

---

[2] The parties do not dispute that our "general superintendence" power under G. L. c. 211, § 3, allows us to review the judge's order granting the defendant's motion for a hearing.  Additionally, "[w]here . . . the single justice has,

2.  Discussion.  a.  Power to amend the original sentence under Mass R. Crim. P. 30 (a).  Rule 30 (a) of the Massachusetts Rules of Criminal Procedure provides:  "Any person who is imprisoned or whose liberty is restrained pursuant to a criminal conviction may at any time, as of right, file a written motion requesting the trial judge to release him or her or to correct the sentence then being served upon the ground that the confinement or restraint was imposed in violation of the Constitution or laws of the United States or of the Commonwealth of Massachusetts."  The defendant's original sentence of life without the possibility of parole is contrary both to the Eighth Amendment, as construed in Miller, and to art. 26, as construed in Diatchenko and Brown.  Because Miller has retroactive effect on cases on collateral appeal, the judge has the power under rule 30 (a) to correct the unconstitutional sentence originally imposed.  See Diatchenko, 466 Mass. 661-667.

When an appellate court determines that one component of an integrated sentencing package is illegal, the court generally vacates the sentence in its entirety, while leaving the underlying convictions intact, and remands for resentencing.  See Commonwealth v. Parrillo, 468 Mass. 318, 321 (2014);

---

in [her] discretion, reserved and reported the case to the full court, we grant full appellate review of the issues reported." Matter of a Grand Jury Investigation, 470 Mass. 399, 402 n.4 (2015), quoting Martin v. Commonwealth, 451 Mass. 113, 117 (2008).

Commonwealth v. Cumming, 466 Mass. 467, 471 (2013); Commonwealth v. Talbot, 444 Mass. 586, 597-598 (2005). In Commonwealth v. Renderos, 440 Mass. 422, 423 (2003), for instance, the defendant was convicted of two counts of indecent assault and battery on a person who had attained fourteen years of age, and was sentenced to a suspended two-year sentence and to a lifetime term of community parole supervision. We determined the lifetime community parole supervision portion of the sentence was contrary to law. Id. at 434. We then vacated the defendant's entire sentence and remanded for resentencing. Id. at 435. We explained that "[t]he judge's belief that lifetime community parole supervision could be imposed influenced his decision as to the appropriate punishment for the defendant's two convictions." Id. As a result, "[t]he sentences imposed constituted an integrated package, each piece dependent on the other, which cannot be separated." Id.

Here, similarly, based on the sentencing laws in place at the time the judge imposed the sentence, the judge believed that the practical consequences of the decision to impose consecutive rather than concurrent sentences would be limited to the defendant's treatment while incarcerated for life. This court's decisions in Diatchenko and Brown transformed a choice that could be regarded as "somewhat symbolic" into one of some consequence, since a consecutive sentence doubles the amount of

time the defendant must serve before he becomes eligible for parole. The judge, in imposing consecutive sentences, could not have known that his decision would have that effect. He also could not have known of the reasoning underlying our decisions in Diatchenko and Brown. Those decisions were based on "current scientific research on adolescent brain development" that led us to conclude that juvenile offenders are "constitutionally different from adults for sentencing purposes." Diatchenko, 466 Mass. at 669-670, quoting Miller, 132 S. Ct. at 2465. We cannot know that the judge would have imposed consecutive sentences had he known about the effect that decision would ultimately have, or had he known about the constitutional differences that separate juvenile offenders from adults. Accordingly, we conclude that resentencing is appropriate under these circumstances.

Our decision is not contrary to Diatchenko. There, we rejected the defendant's argument that he was "entitled to be resentenced," concluding that "he was not improperly sentenced in the first instance, but only was denied the chance to be considered for parole." Diatchenko, 466 Mass. at 674. The defendant in Diatchenko, however, had been convicted of a single count of murder in the first degree, which carried a statutorily mandated sentence of life without the possibility of parole. Id. at 656. Because we remedied that unconstitutional

sentencing statute by excising the parole ineligibility provision, while leaving the rest of the statute to stand, moreover, our decision simply transformed one statutorily mandated sentence (life without the possibility of parole) into another statutorily mandated sentence (life with the possibility of parole after fifteen years). In contrast to cases like Commonwealth v. Renderos, 440 Mass. at 435, where the original sentencing judge exercised a degree of discretion in structuring an "appropriate punishment," therefore, in Diatchenko neither the old nor the new sentence left a sentencing judge any discretion. As a result, a resentencing proceeding would serve no purpose. See Diatchenko, supra. Instead, the defendant, already having served thirty-one years, was "eligible to be considered for parole immediately" and could apply directly "to the Massachusetts parole board for a hearing that shall afford him a meaningful opportunity to obtain release." Id.

While this case involves the same mandatory sentencing scheme at issue in Diatchenko, the original sentencing judge did exercise discretion in deciding to impose consecutive rather concurrent sentences. See Commonwealth v. Lykus, 406 Mass. 135, 145 (1989). That decision, moreover, determines whether the defendant is immediately eligible for parole or must wait an additional two years. The circumstances that rendered a resentencing proceeding before a trial court judge unnecessary

in Diatchenko, therefore, do not exist here.  Hence, in accordance with our general approach where one aspect of an integrated sentence has been deemed illegal, resentencing is appropriate on both convictions.

Our conclusion, resting as it does on our general approach to resentencing rather than on constitutional grounds, has no impact on the current sentencing scheme for juvenile offenders convicted of murder in the first degree.  Our decisions in Diatchenko and Brown resulted in a situation in which the sentencing scheme for juvenile offenders convicted of murder in the first degree was effectively identical to that for juvenile offenders convicted of murder in the second degree.  See Brown, 466 Mass. at 689-691.  The Legislature responded to that situation by providing specific penalties for juvenile offenders convicted of murder in the first degree.  G. L. c. 279, § 24. The resulting legislation establishes that, "for murder in the first degree committed by a person on or after the person's fourteenth birthday and before the person's eighteenth birthday, the court shall fix a minimum term" before the individual becomes eligible for parole "of not less than [twenty] years nor more than [thirty] years."  Id.  Where the conviction of murder in the first degree is based on extreme atrocity or cruelty, "the court shall fix a minimum term of [thirty] years."  Id. Finally, where the conviction of murder in the first degree for

a juvenile offender is based on "deliberately premeditated malice aforethought . . . , the court shall fix a minimum term of not less than [twenty-five] years nor more than [thirty] years." Id.

The new sentencing scheme, therefore, allows (and, in the case of convictions of murder in the first degree based on extreme atrocity or cruelty, demands) the imposition on a juvenile offender convicted of murder in the first degree of a sentence of life with eligibility for parole after thirty years. The defendant, however, was not sentenced under the new sentencing statute. Instead, he was sentenced under the old sentencing statute. Because our decisions in Diatchenko and Brown struck the parole ineligibility provision from that statute when applied to juvenile offenders, the result was that the defendant was sentenced under a statute that required a sentence of life with parole eligibility after fifteen years. The thirty-year time frame until the defendant becomes eligible for parole results from the judge's discretionary decision to impose consecutive sentences. The defendant, moreover, does not base his argument that resentencing is appropriate on the contention that a sentence of life with parole eligibility after thirty years is the "functional equivalent of a sentence of life

without parole." Brown, 466 Mass. at 691 n.11.[3] Instead, the defendant merely argues that, because his sentence of life with parole eligibility after thirty years derives from the judge's decision to impose consecutive sentences, and because the sentencing judge could not have understood that his decision would have that effect, resentencing is appropriate. We agree with that reasoning. Our conclusion that resentencing is proper in this case thus does not rest on a constitutional determination that a sentence of life with parole eligibility in thirty years is the functional equivalent of life without the possibility of parole. Our decision has no impact on the current sentencing scheme for juvenile offenders convicted of murder in the first degree. The constitutionality of that scheme is not before us.[4]

---

[3] Cf. Casiano v. Commissioner of Correction, 317 Conn. 52 (2015) (concluding that "the imposition of a fifty-year sentence without the possibility of parole is subject to the sentencing procedures set forth in Miller"); State v. Null, 836 N.W.2d 41, 71 (Iowa 2013) (determining 52.5-year sentence was "sufficient to trigger Miller-type protections"); Bear Cloud v. State, 334 P.3d 132, 136, 142 (Wyo. 2014) (sentence of forty-five years until parole eligibility sufficient to constitute functional equivalent of life without possibility of parole); United States Sentencing Commission Final Quarterly Data Report, at 32 (Fiscal Year 2013) (equating sentence of 470 months [39.17 years] to life sentence).

[4] There is no merit to the Commonwealth's argument that resentencing is unnecessary because this court already reviewed "the whole case" on both "the law and the evidence" under G. L. c. 278, § 33E, and affirmed the imposition of consecutive sentences. See Commonwealth v. DiBenedetto, 427 Mass. 414, 416

b. Nature of the proceeding. Having determined that a trial court judge may hold a resentencing hearing in these circumstances, we now address the factors to be considered at such a hearing. Generally, "in the exercise of her sentencing discretion, [a] judge may consider a variety of factors including the defendant's behavior, family life, employment history, and civic contributions, as well as societal goals of 'punishment, deterrence, protection of the public, and rehabilitation.'" Commonwealth v. Donohue, 452 Mass. 256, 264 (2008), quoting Commonwealth v. Power, 420 Mass. 410, 414 (1995), cert. denied, 516 U.S. 1042 (1996). In resentencing a juvenile offender originally sentenced to life without the possibility of parole, a judge properly may consider these factors. We identify three additional factors that a judge conducting such a resentencing should consider.

First, in Miller, the United States Supreme Court identified a number of factors (Miller factors) that sentencing judges must consider in making the individualized determination

_____

(1998). This court also affirmed the mandatory imposition of a sentence of life without the possibility of parole, although that decision is plainly contrary to the United States Supreme Court's decision in Miller v. Alabama, 132 S. Ct. 2455, 2460 (2012) (Miller), which we already determined to have retroactive effect. "Miller broke new ground and did not merely apply an established constitutional standard to a novel set of facts." Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 663 (2013), S.C., 471 Mass. 12 (2015). The decision, therefore, rendered invalid sentences previously affirmed by this court after review under G. L. c. 278, § 33E.

whether a juvenile offender should receive a sentence of life without the possibility of parole:  (1) the defendant's "chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds" the defendant; (3) "the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him" or her; (4) whether the defendant "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, [the defendant's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the defendant's] incapacity to assist his [or her] own attorneys"; and (5) "the possibility of rehabilitation."  Miller, 132 S. Ct. at 2468. Because these factors relate to the societal goals of punishment, deterrence, protection of the public, and rehabilitation, see Commonwealth v. Power, 420 Mass. at 414, we believe that a judge should consider the Miller factors when conducting a resentencing hearing of a juvenile offender originally sentenced to multiple consecutive sentences of life without parole.

     Second, this court's decisions in Diatchenko and Brown, like the United States Supreme Court's decision in Miller, were

based on "current scientific research on adolescent brain development." Diatchenko, 466 Mass. at 669. That research led us to conclude that, "because the brain of a juvenile is not fully developed, either structurally or functionally, by the age of eighteen, a judge cannot find with confidence that a particular offender, at that point in time, is irretrievably depraved." Id. at 670. In conducting the resentencing hearing, then, the judge appropriately may consider evidence concerning the defendant's then-extant psychological characteristics in the process of assessing the Miller factors.

Third, "in resentencing following the invalidation of a sentence (where the underlying conviction has not been vacated), the resentencing judge has authority to consider favorable information about [a] defendant's good conduct subsequent to his [or her] original sentencing," as well as "information presented by the Commonwealth concerning a defendant's unfavorable conduct occurring subsequent to his [or her] original sentencing hearing." Commonwealth v. White, 436 Mass. 340, 344-345 (2002).[5]

---

[5] In this regard, a resentencing proceeding under Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001), differs from a revocation and revision proceeding under Mass. R. Crim. P. 29, 378 Mass. 899 (1979). Rule 29 allows a trial judge, within a limited period of time after the imposition of a sentence, to "revise or revoke such sentence if it appears that justice may not have been done." Rule 29 applies to lawful sentences; its purpose is "to permit a judge to reconsider the sentence he [or she] has imposed and determine, in light of the facts as they existed at the time of sentencing, whether the sentence was

Here, the defendant wishes to offer at a resentencing hearing evidence that he has maintained a perfect disciplinary record since his sentencing in 1994, that he has earned a college degree while incarcerated, and that he has founded and led the Restorative Justice Program, which seeks to foster reconciliation between prisoners and their victims' families. The defendant contends that this record of accomplishment is all the more compelling given that, for most of the time he has been incarcerated, he had no hope of ever receiving parole.  We agree that information concerning the defendant's postsentencing conduct, whether favorable or unfavorable, and whether offered by the defendant or by the Commonwealth, properly may be presented and considered at the resentencing hearing.[6]

---

just."  Commonwealth v. Layne, 386 Mass. 291, 295 (1982).  See Commonwealth v. Sitko, 372 Mass. 305, 314 (1977).  The rule contains strict time limits because "the passage of time from the date of sentencing" makes it "increasingly difficult for a trial judge to make the determination called for by the rule without improperly considering postsentencing events." Commonwealth v. Layne, supra at 295-296.  Rule 30, by contrast, permits a motion to be made "at any time," but requires that the person bringing the motion be restrained or confined unlawfully.

[6] Contrary to the Commonwealth's contention, consideration of postsentencing conduct does not violate the separation of powers by encroaching on the parole board's executive function. A judge may not allow a motion to alter a sentence in order to "nullify the discretionary actions of the parole board." Commonwealth v. Amirault, 415 Mass. 112, 117 (1993).  Here, however, the resentencing proceeding merely will determine how many years the defendant must serve before becoming eligible for parole.  The decision whether to grant parole would remain within the parole board's discretion.

3.  Conclusion.  A trial court judge, in resentencing a defendant who was under the age of eighteen at the time of his or her crime under Mass. R. Crim. P. 30 (a) and this court's decisions in Diatchenko and Brown, may amend that aspect of the original sentence that imposed consecutive life sentences to impose instead concurrent life sentences.  At the resentencing proceeding, in addition to the factors considered at any sentencing, the judge should consider:  (a) the Miller factors; (b) evidence regarding the defendant's psychological state at the time of the offense; and (c) evidence concerning the defendant's postsentencing conduct, whether favorable or unfavorable.

The matter is remanded to the county court for entry of a judgment denying the Commonwealth's petition for relief under G. L. c. 211, § 3.

So ordered.