NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12570


COMMONWEALTH  vs.  DANIEL J. LaPLANTE.



Suffolk.     March 5, 2019. - June 6, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.



Homicide.  Constitutional Law, Sentence, Cruel and unusual
    punishment, Parole.  Due Process of Law, Sentence, Parole.
    Practice, Criminal, Sentence, Parole.  Parole.




    Indictments found and returned in the Superior Court
Department on January 12, 1988.

    Following review by this court, 416 Mass. 433 (1993), a
motion to vacate sentence, filed on June 12, 2015, was heard by
Hélène Kazanjian, J.

    A request for leave to appeal was allowed by Lowy, J., in
the Supreme Judicial Court for the county of Suffolk.


    Merritt Schnipper for the defendant.
    Crystal L. Lyons, Assistant District Attorney, for the
Commonwealth.
    Benjamin H. Keehn & Afton M. Templin, Committee for Public
Counsel Services, for Committee for Public Counsel Services &
others, amici curiae, submitted a brief.

LOWY, J.  At the age of seventeen, the defendant, Daniel J. LaPlante, murdered a thirty-three year old pregnant mother, Priscilla Gustafson, and her two young children, Abigail and William Gustafson.  The issue before us is whether the defendant's sentence of three consecutive terms of life imprisonment, with the possibility of parole after forty-five years, constitutes cruel or unusual punishment in violation of art. 26 of the Massachusetts Declaration of Rights.  Because we conclude that, on the specific facts of this case, the defendant's sentence is within constitutional bounds, we affirm.

Background.  1.  Facts.  The facts we recite are drawn from the Superior Court judge's sentencing memorandum, which the parties have designated as their statement of agreed facts:[1]

> "[The defendant] carefully planned [two] intrusions into the Gustafson[s'] home; first breaking in on November 16, 1987, and stealing items.  While he could have stopped there, he decided to return.  He obtained a gun and lied to his brother's friend in order to get bullets.  He practiced loading and unloading the guns. On December 1, 1987, [the defendant] broke into the Gustafson[s'] house for the second time, carrying the loaded weapon.  When he heard Priscilla Gustafson and her [five year old] son William entering the house, he said that his first thought was to jump out the window.  But he decided not to.  He confronted them with the gun, brought them to the bedroom, put William in the closet and tied Priscilla to the bed.  [The defendant] said that after he tied Priscilla to the

---

[1] Our opinion affirming the defendant's convictions on direct appeal also contains a statement of the facts underlying the defendant's crimes and the subsequent police investigation, which we do not repeat here.  See Commonwealth v. LaPlante, 416 Mass. 433, 433-439 (1993).

bed, his plan was to leave. But once again he decided not to. Instead, he made the decision to rape her. After raping her, he acknowledged that he could have left. Instead, he decided he would kill her. After he killed Priscilla, [the defendant] made the decision to take William into the bathroom and drown him. As he was leaving, he encountered [seven year old] Abigail. He lured her into the bathroom and made the decision to drown her as well. . . . After fleeing the scene, [the defendant] went home, ate and then attended his niece's birthday party as if nothing had happened."

2. <u>Sentencing and other posttrial proceedings</u>. In 1988, the defendant was convicted of three counts of murder in the first degree and sentenced to three consecutive terms of life imprisonment without the possibility of parole. This court affirmed the convictions after plenary review. <u>Commonwealth</u> v. <u>LaPlante</u>, 416 Mass. 433, 444 (1993).

In 2012, the United States Supreme Court held that the prohibition on "cruel and unusual punishments" contained in the Eighth Amendment to the United States Constitution forbids mandatory sentences of life without parole for juvenile offenders.[2] <u>Miller</u> v. <u>Alabama</u>, 567 U.S. 460, 465 (2012). The following year, this court held that <u>Miller</u> was retroactive to cases on collateral review, and we determined that the protections of art. 26 extend beyond the Eighth Amendment protections outlined in <u>Miller</u>, such that art. 26 prohibits the

---

[2] Throughout this opinion, the term "juvenile" offender refers to an offender who was under the age of eighteen at the time of the offense.

imposition of life sentences without the possibility for parole
-- whether such imposition is mandatory or discretionary -- on
juvenile offenders.  Diatchenko v. District Attorney for the
Suffolk Dist., 466 Mass. 655, 658-659 (2013) (Diatchenko I),
S.C., 471 Mass. 12 (2015).

In a separate opinion issued the same day as Diatchenko I,
we noted that, going forward, the contours of a new sentencing
scheme for juvenile homicide offenders would be left to the
sound discretion of the Legislature.  Commonwealth v. Brown, 466
Mass. 676, 691 n.11 (2013), S.C., 474 Mass. 576 (2016).  We
emphasized, however, that any constitutional sentencing scheme
must "avoid imposing on juvenile defendants any term so lengthy
that it could be seen as the functional equivalent of a sentence
of life without parole."  Id.

Under Diatchenko I, 466 Mass. at 673, the remedy for
juvenile homicide offenders such as the defendant, who had been
sentenced under statutory provisions since declared
unconstitutional, was to leave their life sentences in full
force and effect, but to hold that the statutory prohibition on
parole eligibility did not apply to them.  Consequently, the
defendant's three consecutive life sentences were restructured
in accordance with applicable statutory provisions and parole
regulations, with the result that he would become eligible for
parole after serving forty-five years in prison.

The defendant subsequently filed a motion to vacate his sentence. While that motion was pending, this court decided Commonwealth v. Costa, 472 Mass. 139, 149 (2015), in which we held that juvenile defendants who were sentenced to consecutive terms of life imprisonment before our decision in Diatchenko I were entitled to a resentencing hearing at which,

> "in addition to the factors considered at any sentencing, the judge should consider (a) the Miller factors; (b) evidence regarding the defendant's psychological state at the time of the offense; and (c) evidence concerning the defendant's postsentencing conduct, whether favorable or unfavorable."[3]

In light of Costa, the Commonwealth conceded that the defendant was entitled to a resentencing hearing, and the motion judge ordered that the defendant be resentenced.

---

[3] We enumerated the "Miller factors" as follows:

> "(1) the defendant's 'chronological age and its hallmark features -- among them, immaturity, impetuosity, and failure to appreciate risks and consequences'; (2) 'the family and home environment that surrounds' the defendant; (3) 'the circumstances of the homicide offense, including the extent of [the defendant's] participation in the conduct and the way familial and peer pressures may have affected him' or her; (4) whether the defendant 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth -- for example, [the defendant's] inability to deal with police officers or prosecutors (including on a plea agreement) or [the defendant's] incapacity to assist his [or her] own attorneys'; and (5) 'the possibility of rehabilitation.'"

Commonwealth v. Costa, 472 Mass. 139, 147 (2015), quoting Miller v. Alabama, 567 U.S. 460, 477-478 (2012).

Following a period for the parties to conduct discovery and to obtain expert evaluations, an evidentiary hearing was held, during which the Commonwealth offered the expert testimony of Dr. Fabian M. Saleh and a number of exhibits were entered in evidence. Based on the evidence presented, after considering traditional sentencing factors as well as the additional factors set forth in Miller and Costa, the sentencing judge reinstated the sentence of three consecutive life terms with parole eligibility after forty-five years.

The defendant filed a "gatekeeper" application with this court pursuant to G. L. c. 278, § 33E, for leave to appeal from the resentencing judge's ruling, as well as a motion for direct entry of the appeal. The single justice directed entry of the appeal on the question "whether a juvenile homicide offender may be required to serve forty-five years in prison before his or her first opportunity to seek release based on rehabilitation." We limit our answer to this question to the specific facts of this case, where the juvenile offender's resentencing occurs when he is well into adulthood and follows a hearing at which evidence is presented regarding the offender's postsentencing conduct and prospects for rehabilitation.

Discussion. The defendant concedes that the Eighth Amendment does not bar the sentence that he received and that the evidence in this case supported the resentencing judge in

exercising her discretion to impose the most severe punishment permitted under our State Constitution.  Therefore, the sole question before us is whether this defendant's sentence crosses the line drawn by art. 26, which prohibits the imposition of "cruel or unusual punishments."

"Where a defendant claims that a judge has made an error of constitutional dimension, 'we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Perez, 480 Mass. 562, 567-568 (2018) (Perez II), quoting Commonwealth v. Villagran, 477 Mass. 711, 713 (2017). However, we "review independently the application of constitutional principles to the facts found."  Perez II, supra, quoting Villagran, supra.

The defendant invites this court to announce a bright-line rule, a ceiling that no legislator or sentencing court constitutionally may exceed in setting parole eligibility for a juvenile homicide offender.  We decline this invitation.  We also decline the Commonwealth's invitation to declare that where each life sentence carries an individually permissible parole eligibility period of fifteen years, the aggregate term to be served before initial parole eligibility is not subject to a proportionality analysis under art. 26.  Cf. Commonwealth v.

Perez, 477 Mass. 677, 679 (2017) (Perez I) (analyzing constitutionality under art. 26 of "aggregate time to be served prior to parole eligibility" of juvenile nonhomicide offender). Instead, the constitutionality of the defendant's sentence, including the aggregate term to be served before parole eligibility, is to be evaluated in light of the particular facts presented.

"To reach the level of cruel and unusual, the punishment must be so disproportionate to the crime that it 'shocks the conscience and offends fundamental notions of human dignity.'" Cepulonis v. Commonwealth, 384 Mass. 495, 497 (1981), quoting Commonwealth v. Jackson, 369 Mass. 904, 910 (1976). We make this determination by applying the three-prong disproportionality test set forth in Cepulonis, supra at 497-498. See Perez I, 477 Mass. at 684 (applying Cepulonis disproportionality test in context of juvenile defendant's challenge to constitutionality of his sentence).

The three prongs include (1) an "inquiry into the 'nature of the offense and the offender in light of the degree of harm to society'"; (2) "a comparison between the sentence imposed here and punishments prescribed for the commission of more serious crimes in the Commonwealth"; and (3) "a comparison of the challenged penalty with the penalties prescribed for the same offense in other jurisdictions" (citation omitted).

Cepulonis, 384 Mass. at 497-498.  The burden of proving

disproportionality rests on the defendant.  Id. at 497.[4]

Moreover, where, as here, the defendant, a juvenile

homicide offender, was originally sentenced before Miller and

Diatchenko I and has now been resentenced after the age of

forty, the resentencing must comply with the procedures set

forth by this court in Costa.  The Costa inquiry includes

consideration of the Miller factors -- among them, the

"possibility of rehabilitation" -- as well as an assessment of

the defendant's postsentencing conduct, "whether favorable or

unfavorable."  Costa, 472 Mass. at 147, 149, quoting Miller, 567

U.S. at 478.[5]

---

[4] As noted above, the defendant concedes that the facts of
his case warrant the most severe punishment permitted under our
Constitution.  As a result, this case defies direct application
of the second Cepulonis prong.  The defendant simply does not
suggest that there are "more serious crimes" to which this
multiple homicide ought to be compared.  And with respect to the
third Cepulonis prong, the defendant cannot point to any case
from outside this jurisdiction invalidating a forty-five year
period before parole eligibility where the defendant committed
three distinct and deliberate murders.

[5] A resentencing proceeding under Costa differs from a
proceeding pursuant to a motion to revise or revoke a sentence
under Mass. R. Crim. P. 29, 378 Mass. 899 (1979).  See Costa,
472 Mass. at 148 n.5.  The consideration of these factors at a
Costa hearing does not violate the separation of powers.  Id. at
149 n.6.  Rather, here, as in Costa, "[t]he decision whether to
grant parole [will] remain within the parole board's
discretion."  Id.

These same factors -- the Miller factors and an assessment of the defendant's postsentencing conduct -- inform our analysis of the constitutionality of the resulting sentence under art. 26. "Disproportionality is not . . . an abstract inquiry." Perez I, 477 Mass. at 684.[6] Rather, we must conduct a proportionality analysis under art. 26 that takes into account all of the facts and circumstances that were before the resentencing judge at the Costa hearing.

In so doing, we remain mindful of our determination that under art. 26, "the 'unique characteristics of juvenile offenders' should weigh more heavily in the proportionality calculus than the United States Supreme Court required under the Eighth Amendment." Perez I, 477 Mass. at 683, quoting Diatchenko I, 466 Mass. at 671. That distinction formed the basis for our holding in Diatchenko I that, under art. 26, all juvenile homicide offenders "should be afforded a 'meaningful opportunity to obtain release based on demonstrated maturity and

---

[6] For this reason, this case does not compel us to decide whether the defendant's sentence would have been constitutional if it had been imposed upon him at the age of eighteen, when he was originally sentenced. Cf. Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 670 (2013), S.C., 471 Mass. 12 (2015) (holding that "because the brain of a juvenile is not fully developed, either structurally or functionally, by the age of eighteen, a judge cannot find with confidence that a particular offender, at that point in time, is irretrievably depraved" [emphasis added]).

rehabilitation.'"  Diatchenko I, supra at 674, quoting Graham v. Florida, 560 U.S. 48, 75 (2010).[7]

Here, the defendant will have the opportunity to appear before the parole board after serving an aggregate term of forty-five years.  In Diatchenko I and Brown, we effectively held constitutional the statutory default period of fifteen years before parole eligibility for a juvenile offender convicted of a single count of murder in the first degree, while recognizing the discretion of the Legislature to adjust that period going forward to distinguish among "lesser" and "more severe" degrees of murder.  Brown, 466 Mass. at 689 n.10, 690. See Diatchenko I, 466 Mass. at 673-674.  Then, in Commonwealth v. Okoro, 471 Mass. 51, 62 (2015), we held constitutional that same fifteen-year period for juvenile offenders convicted of murder in the second degree.  It stands to reason, therefore, that the discretion to which we referred in Brown would permit

---

[7] On appeal before this court, the defendant argues that our analysis under art. 26 of the Massachusetts Declaration of Rights also should proceed "mindful of" the "shortened life expectancies" of juvenile offenders such as the defendant. However, no evidence regarding the defendant's life expectancy -- or the life expectancies of juvenile offenders in general -- was presented to the resentencing court, and the defendant ultimately "does not contend" that our analysis in this case should "turn on" such factors.

some period in excess of fifteen years before parole eligibility for a juvenile offender convicted of murder in the first degree.[8]

Further, by remanding the case for resentencing in Costa, this court confirmed that in cases involving multiple counts of murder, sentencing judges retain the discretion to impose consecutive terms of life imprisonment.  We "emphatically did not hold that Costa was entitled to be resentenced to concurrent life terms to allow parole eligibility after fifteen years." Perez I, 477 Mass. at 687.[9]

The question remains whether a period of forty-five years of incarceration before parole eligibility is proportioned "to both the offender and the offense" in this case, Diatchenko I, 466 Mass. at 669, quoting Miller, 567 U.S. at 469, given all the evidence before the resentencing judge.  We do not dwell long on the facts of the defendant's offenses, which, as the defendant

---

[8] In fact, we have since held that even juvenile nonhomicide offenders may be sentenced to an aggregate period before parole eligibility that exceeds fifteen years, where "extraordinary circumstances" warrant such a sentence.  See Commonwealth v. Perez, 477 Mass. 677, 686 (2017) (Perez I).

[9] Moreover, here, unlike in Perez I, we do not begin from any presumption of disproportionality under art. 26.  The presumption in Perez I applies specifically to nonhomicide offenders whose sentence would result in a period of incarceration before parole eligibility that exceeds that imposed on juveniles convicted of murder.  Perez I, 477 Mass. at 686.  See Commonwealth v. Lutskov, 480 Mass. 575, 583 (2018).

concedes, are so egregious as to warrant the most severe punishment permissible under our Constitution.

With respect to the characteristics of the defendant, the resentencing judge concluded that "the evidence submitted at the hearing did not reflect that at the time of the murders he displayed the 'hallmark features' of a juvenile, that is, immaturity, impetuosity and failure to appreciate risks and consequences."  Rather, she found that the defendant "acted deliberately and intentionally" when committing these "three distinct and brutal murders" and that, in describing those murders to Saleh as an adult, he displayed "an extraordinary lack of empathy."

The resentencing judge further found that the defendant's "family and home environment was . . . relatively unremarkable." As to his psychological state, she credited the testimony of Saleh that the defendant currently suffers from antisocial personality disorder, which Saleh described as a "severe form of a personality disorder with the hallmark[s] being the disregard for the rights of others . . . [and] the lack of remorse." Based on Saleh's testimony, the resentencing judge also found that the murders of the victims "were a result of Conduct Disorder, Child onset Type, rather than any adverse childhood experiences, learning disabilities or immaturity."  Ultimately, the resentencing judge concluded that although the defendant has

"shown signs of improved behavior" in recent years, his "prognosis for rehabilitation in the future is 'guarded.'"

Based on the record before us, we need go no further. The defendant's sentence is proportional both to the crimes he committed and to his particular characteristics as an offender, giving due weight under art. 26 to the fact that he was a juvenile when he committed the crimes.

Conclusion. For these reasons, we conclude that the sentence imposed on the defendant by the resentencing judge does not violate art. 26 and therefore affirm her resentencing decision.

So ordered.