HERNANDEZ, IN THE MATTER OF, 101 Mass. App. Ct. 856

 
 IN THE MATTER OF PEDRO HERNANDEZ.

101 Mass. App. Ct. 856
 July 14, 2022 - November 10, 2022

Court Below: Superior Court, Essex County
Present: Ditkoff, Walsh, & Brennan, JJ.

 

No. 21-P-518.

Incompetent Person, Commitment. Evidence, Hearsay. Practice, Civil, Commitment of mentally ill person, Hearsay.

The prior hospitalization of the respondent on a petition for involuntary civil commitment pursuant to G. L. c. 123, § 16 (b), for observation and examination beyond the aggregate fifty-day maximum period authorized by G. L. c. 123, § 16 (a), did not create a jurisdictional bar to adjudicating a petition filed beyond that statutory period, where § 16 (b) authorized filing a petition for commitment within sixty days after a person was found to be incompetent to stand trial or not guilty of any crime by reason of mental illness or other mental defect and was not contingent on compliance with the time limits of § 16 (a), nor did any language in the statute suggest that hospitalization beyond the statutory fifty-day period required dismissal of the petition for commitment as the appropriate remedy; and where § 16 (b) specifically contemplated circumstances in which a petition could be litigated after the hospitalization period of § 16 (a) had expired, or when hospitalization under § 16 (a) had not been ordered at all; thus, proceedings on such a petition for commitment were independent of any hospitalization period under §§ 15 (b) and 16 (a). [861-864]

In the circumstances of a petition for commitment filed by a Department of Mental Health facility pursuant to G. L. c. 123, § 16 (b), during the evaluation of the respondent at the facility, pursuant to G. L. c. 123, § 16 (a), following a trial at which a Superior Court judge found the respondent not guilty on two indictments by reason of lack of criminal responsibility, a different Superior Court judge did not err in allowing the Commonwealth to join or intervene as a joint petitioner, where the facility and the Commonwealth were authorized to file a petition for the respondent's commitment within sixty days of the finding that he was not criminally responsible, the facility timely filed such a petition, and the Commonwealth timely moved to join the petition, in that the statutory right to be heard on the facility's petition was consistent with the purpose of G. L. c. 123 of balancing the rights of and protections for incompetent persons with the Commonwealth's interest in protecting the public from potentially dangerous persons who may be unable to control their actions because of their mental condition. [864-866]

At a hearing on a petition pursuant to G. L. c. 123, § 16 (b), no prejudice flowed from the judge's erroneous consideration of inadmissible evidence that was 

 Page 857 

either favorable to the respondent or otherwise cited to support points not in dispute and corroborated elsewhere in the record, and any other reliance on the inadmissible evidence was minimal such that the judge's decision was not substantially swayed by the error [866-869]; further, to the extent the judge erroneously relied on certain competency findings that were not admitted in evidence at the hearing (in two passing references), no prejudice could be discerned, where the judge would have reached the same decision irrespective of the mention of those earlier findings, in that the properly admitted evidence overwhelmingly established the same historical information about the respondent, and in that the judge clearly understood that while the respondent's past actions may have been relevant, her task was to evaluate the current risk of harm if the respondent were not committed [869-870]; finally, the judge was free to make a credibility determination as to the respondent's evidence concerning adolescent brain development, wherein the judge permitted the respondent to introduce such evidence but declined to credit the opinion of the respondent's expert [870-871].

Petition for civil commitment filed in the Superior Court Department on December 16, 2020.

 The case was heard by Janice W. Howe, J.

 Gail M. McKenna for the respondent.

 Kristen W. Jiang, Assistant District Attorney, for the Commonwealth.

 WALSH, J. The respondent, Pedro Hernandez, appeals from a Superior Court order granting a petition for involuntary civil commitment pursuant to G. L. c. 123, § 16 (b). On appeal, the respondent argues that the order must be vacated because he was hospitalized beyond the maximum time period permitted under G. L. c. 123, § 16 (a), and that the Commonwealth's attempts to petition for the respondent's commitment were untimely and otherwise flawed. In addition to these procedural issues, the respondent contends that the judge made certain legal and factual errors in her findings. We affirm.

 Background. 1. Procedural history. In February 2019, a grand jury returned indictments charging the respondent with one count of armed assault with intent to murder and one count of assault and battery by means of a dangerous weapon causing serious bodily injury. The indictments stemmed from a December 2018 incident where the respondent stabbed his stepfather, unprovoked, and caused near fatal wounds (index event). The respondent was nineteen years old at the time.

 A Superior Court judge (competency judge) ordered the respondent hospitalized for a competency examination at Bridgewater State Hospital (BSH) pursuant to G. L. c. 123, § 15 (b), for 

 Page 858 

forty days, from April 1, 2019, to May 10, 2019. [Note 1] Thereafter, three competency hearings were held, each resulting in a finding that the respondent was not competent to stand trial. The respondent was then ordered committed to BSH for a period of six months pursuant to G. L. c. 123, § 16 (b), by the competency judge. After the expiration of that period, he was committed to BSH for up to an additional one-year period under G. L. c. 123, § 18 (a).

 When the respondent's condition improved during the one-year period of commitment, the criminal matter was set for a trial. [Note 2] On November 9, 2020, following a jury-waived trial, another Superior Court judge (trial judge) found the respondent not guilty by reason of lack of criminal responsibility on both indictments.

 Following that finding, the Commonwealth filed a motion seeking to have the respondent evaluated at BSH pursuant to G. L. c. 123, § 16 (a). In response to that motion, the respondent's counsel explained, "My client is agreeing to go on the 16 (a) -- he wants to." Counsel further requested that the trial judge consider placing the respondent in a Department of Mental Health (DMH) facility rather than BSH "for the pure reason that if [DMH staff] can get him on track, they can also set him up with services for the future . . . . And he wants their assistance."

 After the respondent was interviewed by a court clinician, the trial judge ordered the respondent's hospitalization at Worcester Recovery Center and Hospital (WRCH), a DMH facility, pursuant to G. L. c. 123, § 16 (a). The order specified that the respondent could "be hospitalized for a period of [forty] days at [WRCH] for observation and examination, provided that the combined periods of this hospitalization and any prior hospitalizations pursuant to G. L. c. 123, § 15 (b) shall not exceed [fifty] days." See G. L. c. 123, § 16 (a). Even though the respondent previously had been hospitalized at BSH for forty days under § 15 (b), the trial judge and the parties discussed the order as authorizing the respondent's continued hospitalization for an additional period of forty days, through December 18, 2020, rather than only an additional ten days.

 Page 859 

 On December 16, 2020, WRCH filed a petition for commitment pursuant to G. L. c. 123, § 16 (b), and a status conference was held on the matter on December 18, 2020. The respondent, as he was authorized to do under G. L. c. 123, § 7 (c), requested to continue the hearing on the petition beyond the fourteen-day period contemplated by the statute. Thereafter, the respondent filed two assented-to motions to continue, which were allowed. In assenting to the motion to continue filed on January 14, 2021, WRCH represented that it was "working on a discharge plan [that] will mitigate Respondent's risk in the community." At a hearing held the following day, WRCH's counsel represented that the respondent had shown "considerable progress." The respondent and WRCH jointly requested an additional two weeks so that WRCH could continue to observe the respondent and prepare services in anticipation of his discharge. The Commonwealth was not present at that hearing.

 On January 19, 2021, the Commonwealth moved for copies of the respondent's medical records. An assistant district attorney then appeared at the next status conference on January 26, 2021, along with counsel for WRCH and the respondent. At the status conference, WRCH's counsel indicated that it intended to withdraw its § 16 (b) petition and to discharge the respondent "[u]nless something happens between now and Friday," i.e., January 29. The assistant district attorney represented that she needed more time to review the respondent's records to determine whether the Commonwealth would join WRCH's petition, file a separate petition, or seek some other remedy. The respondent requested an immediate hearing on the petition, which was scheduled for February 8, 2021.

 On January 29, 2021, the Commonwealth filed a petition for commitment pursuant to G. L. c. 123, § 16 (c). [Note 3] On February 1, 2021, the Commonwealth filed an amended petition, this time pursuant to G. L. c. 123, § 16 (b). On February 8, 2021, the first day of the evidentiary hearing on the petition for commitment, the Commonwealth also filed a motion to join WRCH's petition, which was allowed by the Superior Court judge who presided over that hearing (petition judge or judge); the judge explained that she treated it as a motion to join, or in the alternative, to intervene. As a result of this ruling, the judge deemed WRCH and the Commonwealth joint petitioners.

 Page 860 

 2. Evidentiary hearing and findings. The matter proceeded to evidentiary hearing on February 8, 9, 10, and 11, 2021. At the hearing, only the Commonwealth pursued prosecution of the petition; WRCH restated its position that the respondent should be discharged and connected with certain services in the community.

 The Commonwealth called two witnesses, Tali Walters, Ph.D., a forensic psychologist, and Salem Police Lieutenant Kristian Hanson. The respondent called Robert Welch, a board-certified general psychiatrist. [Note 4] The curriculum vitae of Dr. Walters and Dr. Welch; two reports dated December 18, 2020, and January 25, 2021, authored by Heidi Putney, Ph.D., based on the G. L. c. 123, § 16 (a), evaluation of the respondent (Putney evaluations); and a redacted copy of the respondent's WRCH medical records between November 9, 2020, and January 8, 2021, were admitted in evidence. [Note 5]

 We briefly discuss the expert testimony, reserving further details for our later discussion. Dr. Walters reviewed the respondent's medical records from WRCH and BSH, two criminal responsibility evaluations, the Putney evaluations from December 2020 and January 2021, and various documents concerning the index event. She also spoke with the respondent's mother but did not interview or provide treatment to the respondent. [Note 6] Dr. Walters testified that the respondent's symptoms were consistent with a diagnosis of schizophrenia. She explained that the information she reviewed "all suggest[s] a high level of risk for future violence associated with mental illness." However, she expressly noted that she could not offer "an opinion of [the respondent's] level of risk" in the absence of an in-person evaluation of the respondent. Dr. Walters also opined that a hospital facility was the least restrictive place where the respondent could receive the services he needed. In support of that conclusion, she explained that outpatient programs would not properly "address[] the issue[s] of insight improvement and risk reduction."

 Dr. Welch interviewed the respondent, the respondent's mother, the respondent's attending psychiatrist at WRCH, and the respondent's social worker. He also reviewed the WRCH and BSH 

 Page 861 

records, the Putney evaluations, police reports, and grand jury testimony. Although Dr. Welch opined that the respondent met the criteria for schizophrenia, he noted that the respondent had been compliant with medication since July 2020 and did not currently have any symptoms of schizophrenia or psychosis. Dr. Welch further opined that the respondent did not pose an imminent risk of harm to himself or others at that point in time. He concluded that the respondent could be treated "safely and effectively" in the community while "living in his mother's home with a PACT Team," [Note 7] the most intensive outpatient service team available. Dr. Welch explained that the respondent had insight into his mental illness and the need for treatment, but that insight is not required for a patient to be safe in the community.

 On February 22, 2021, the petition judge issued written findings of fact and rulings of law. She found that the respondent suffered from a "mental illness" as defined by DMH. "[B]alanc[ing] the severity, imminence and probability of potential harm," she found that the failure to hospitalize the respondent in a facility would create a likelihood of serious harm to others by reason of the respondent's mental illness. In reaching that decision, the judge considered the nature of the index event and the respondent's other instances of violent or dangerous behavior; the respondent's history of noncompliance with medication, including during the time leading to the index event; the respondent's historical and potential future use of marijuana and alcohol; the respondent's lack of insight into his mental illness, his need for psychotropic medications, and the nexus between his mental illness and the index event; and the respondent's misattribution of his symptoms leading to the index event as "anger."

 Finally, the judge found that hospitalization was the least restrictive means to treat the respondent at that time given Dr. Walters's contention that the respondent would pose "a high level of risk of violence" if discharged. In light of these findings, the judge entered an order allowing the petition for commitment for a period of six months pursuant to G. L. c. 123, § 16 (b).

 Discussion. 1. "Observation and examination" period. The respondent argues that dismissal of the petition for commitment was required because he was hospitalized for "observation and examination" beyond the maximum period set forth in G. L. 

 Page 862 

c. 123, § 16 (a). [Note 8] We note at the outset that the respondent -- who consented to his hospitalization beyond that statutory period -- frames his argument as one concerning subject matter jurisdiction. See, e.g., Doherty v. Civil Serv. Comm'n, 486 Mass. 487, 491 (2020) ("[s]ubject matter jurisdiction cannot be conferred by consent, conduct or waiver" [citation omitted]). Because "[s]ubject matter jurisdiction . . . is both conferred and limited by statute," we turn to the relevant provisions of G. L. c. 123. [Note 9] Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40, 41 (2012), quoting Middleborough v. Housing Appeals Comm., 449 Mass. 514, 520 (2007).

 General Laws c. 123 permits a court having jurisdiction over criminal proceedings to order the accused hospitalized for observation and examination prior to trial, see G. L. c. 123, § 15 (b), and after a finding that the accused is not criminally responsible by reason of mental illness, see G. L. c. 123, § 16 (a). [Note 10] The statute limits the combined period of hospitalization under those two provisions to fifty days. See id.

 There is no dispute that the respondent was hospitalized for "observation and examination" beyond the aggregate fifty-day 

 Page 863 

maximum period authorized by § 16 (a). [Note 11] However, a plain reading of the statute makes clear that such hospitalization does not create a jurisdictional bar to adjudicating a petition for commitment filed beyond that statutory period. [Note 12] Section 16 (b) gives "the district attorney, the superintendent of a facility [Note 13] or the medical director of the [BSH] unequivocal authority to file a petition for commitment "within sixty days after a person is found to be incompetent to stand trial or not guilty of any crime by reason of mental illness or other mental defect." G. L. c. 123, § 16 (b). The authority to file such a petition is not contingent on compliance with the time limits of G. L. c. 123, § 16 (a), nor does any language in the statute suggest that hospitalization beyond the statutory fifty-day period requires dismissal of the petition for commitment as the appropriate remedy. Moreover, § 16 (b) specifically contemplates circumstances where a petition may be litigated after the hospitalization period of § 16 (a) has expired, or when hospitalization under § 16 (a) has not been ordered at all. [Note 14] In such circumstances, a judge may order the respondent's "temporary detention . . . in a jail, house of correction, facility or the [BSH]," until findings can be made on the petition. G. L. c. 123, 

 Page 864 

§ 16 (b). Such an order was entered here after WRCH filed its petition.

 Based on the Legislature's clear treatment of the proceedings on a petition for commitment as independent of any hospitalization period under §§ 15 (b) and 16 (a), we reject the respondent's jurisdictional argument. [Note 15] Contrast Pembroke Hosp. v. D.L., 482 Mass. 346, 352-354 (2019) (failure to discharge respondent within meaning of c. 123 after initial petition for commitment was denied barred second petition); Hashimi v. Kalil, 388 Mass. 607, 609-610 (1983) (dismissal of petition for commitment required where there was violation of statutory right to hearing on petition within fourteen days absent consent to continuance).

 2. Commitment proceedings. The respondent next argues that G. L. c. 123 obligated WRCH to withdraw its petition once it determined that the respondent no longer met the criteria for commitment, and that the Commonwealth's attempts to pursue commitment thereafter were untimely and otherwise procedurally flawed.

 We again are tasked with examining the language of G. L. c. 123, § 16. "Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Commonwealth v. Peterson, 476 Mass. 163, 167 (2017), quoting Sheehan v. Weaver, 467 Mass. 734, 737 (2014). "'Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent.' That said, we do not adhere blindly to a literal reading of a statute if doing so would yield an 'absurd' or 'illogical' result" (citations omitted). Peterson, supra.

 As discussed above, under G. L. c. 123, § 16 (b), WRCH and the Commonwealth were authorized to file a petition for the respondent's commitment within sixty days of the finding that he was not criminally responsible. WRCH timely filed such a petition. The Commonwealth did not -- and was not required to -- file a duplicate petition in that time frame. We disagree with the contention that the failure to do so left the Commonwealth without recourse once WRCH determined that the respondent was suitable for discharge. This argument misconstrues § 16 

 Page 865 

when the statute is read, as it must be, as a whole. Specifically, the statute includes a provision requiring that 

"[t]he district attorney for the district within which the alleged crime or crimes occurred shall be notified of any hearing conducted for a person under the provisions of this section or any subsequent hearing for such person conducted under the provisions of this chapter relative to the commitment of the mentally ill and shall have the right to be heard at such hearings."

G. L. c. 123, § 16 (d). Thus, the plain terms of the statute give the Commonwealth the right to participate in the commitment proceedings regardless of whether the Commonwealth or WRCH filed the petition for commitment.

 Here, WRCH properly notified the Superior Court and the Commonwealth on January 14, 2021, of its intent to discharge the respondent. Contrary to the respondent's contention, nothing in the statutory scheme required WRCH to withdraw a petition once it determined that it did not wish to proceed, much less mandated that the judge was obligated to allow such a withdrawal over the Commonwealth's objection. [Note 16] The Commonwealth timely moved to join WRCH's petition. This statutory right to be heard on WRCH's petition is consistent with G. L. c. 123's purpose of balancing "the rights of and protections for incompetent persons with the Commonwealth's interest in 'protecting the public from potentially dangerous persons' who may be unable to control their actions because of their mental condition" (citation omitted). Matter of M.C., 481 Mass. at 344. Moreover, nothing in the statute suggests that the Commonwealth was required to file a "placeholder" petition after WRCH -- another entity authorized by the statute to seek the respondent's commitment -- filed its petition. See G. L. c. 123, § 16 (b). To construe the statute otherwise 

 Page 866 

would yield an illogical result. We discern no error in the judge's decision to allow the Commonwealth to intervene in the circumstances presented here.

 3. Evidentiary issues. The respondent argues that the judge improperly considered inadmissible hearsay, mischaracterized Dr. Walters's testimony on risk of imminent harm, erroneously relied on prior findings from another Superior Court judge on the issue of competency, and failed to consider expert evidence of adolescent brain development. He also contends that these errors collectively prejudiced him and created a substantial risk of a miscarriage of justice.

 a. Hearsay evidence. The respondent argues that the petition judge improperly admitted documentary evidence containing hearsay and permitted the Commonwealth's expert to testify about inadmissible hearsay. Because the respondent lodged timely objections, we review for prejudicial error. See Matter of J.P., 486 Mass. 117, 121-122 (2020).

"An error is not prejudicial if it 'did not influence the [fact finder], or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error,' then it is prejudicial."

Commonwealth v. Canty, 466 Mass. 535, 545 (2013), quoting Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

 The judge admitted the two Putney evaluations in evidence at the hearing on the petition for commitment and permitted Dr. Walters to testify about their contents on direct examination. Dr. Walters also was permitted to recite the contents of two progress notes from January 2021 that were not part of the medical records admitted in evidence. As the Commonwealth concedes, it was error to consider the Putney evaluations and the progress notes as this evidence constituted inadmissible hearsay. See Matter of J.P., 486 Mass. at 122 (hearsay must fall within exception to hearsay rule to be admissible at commitment hearing). See also Matter of P.R., 488 Mass. 136, 137 (2021) ("experts may not testify on direct examination about the basis of their opinion when these facts are neither within their personal knowledge nor otherwise admitted in evidence during the proceeding").

 Because admission of this evidence was error, we turn to the issue of prejudice. The judge found beyond a reasonable doubt 

 Page 867 

that the respondent met the statutory criteria for civil commitment, namely "[1] that the respondent is mentally ill, [2] that failure to retain the respondent in a [DMH] facility would create a likelihood of serious harm to others by reason of mental illness, and [3] that there is no less restrictive alternative to hospitalization by which to treat the respondent."

 The effect of the inadmissible evidence on the first and third statutory criteria is easily addressed. On the issue of mental illness, the judge considered Dr. Putney's opinion, which was "in accord" with that of both experts who testified. Indeed, as the judge noted, the uncontroverted evidence established that the respondent suffered from a mental illness as defined by DMH. Because no dispute existed, no prejudice resulted from any consideration of Dr. Putney's opinion.

 On the issue of the least restrictive alternative, the judge expressly considered Dr. Putney's opinion, which was favorable to the respondent's position that placement in outpatient treatment was appropriate. According to the judge's findings, Dr. Putney opined that the respondent did "not meet clinical criteria for filing a petition for involuntary commitment" in December 2020 [Note 17] and Dr. Putney concluded that the respondent did "not currently require inpatient hospital-level care" in January 2021. Where the judge ultimately rejected Dr. Putney's recommendations (as well as those of Dr. Welch), the admission of the Putney evaluations clearly "did not influence the [fact finder], or had but very slight effect" (citation omitted). Canty, 466 Mass. at 545.

 On the remaining issue of the imminent likelihood of harm, the properly admitted evidence, including the WRCH records, established each of the factors relied on by the judge in her findings. 

 Page 868 

The index event was serious: the respondent stabbed his sleeping stepfather while the respondent was in "a potential catatonic episode with dissociation." The stepfather was hospitalized for two weeks as a result of his injuries. The respondent had a history of displaying "threatening and assaultive behavior and inappropriate sexual behavior," even while hospitalized and including as recently as spring 2020.

 The respondent had a history of noncompliance with medication, including "cheeking" [Note 18] his medications while at BSH and not complying with his medications at the time of the index event. The respondent also lacked insight into his illness and his need for psychiatric medication. Specifically, in November 2020, the respondent had "limited insight into the need for medications," explaining that he did not think something similar to the index event would occur if he stopped taking his medication. In December 2020, the respondent's insight about his medication was "fragile," and the respondent could not "fully identify how medication has been helpful"; he reported that he was not concerned about decompensating if he ceased medication and attributed his past actions to "bad relationships" and his "anger."

 The respondent had a history of using marijuana on a daily basis prior to the index event and "drank hard alcohol in excess" in the past. In November 2020, he expressed an intent to refrain from the use of marijuana if discharged to the community; however, he indicated that he would use alcohol "but not abuse it." Moreover, in December 2020, the respondent showed "limited engagement . . . in substance-related treatment opportunities."

 The additional information that the judge gleaned from the inadmissible evidence on these factors was minimal. [Note 19] The judge noted Dr. Putney's discussion of the respondent's behavior as a child and while held on the indictments; some of this information also was included in the WRCH records and the judge expressly considered Dr. Welch's testimony in response to this information that the respondent's current compliance with medication 

 Page 869 

rendered him not likely to present a serious risk of harm in the community. On the issue of the respondent's insight into the connection between his mental illness and the index offense, the judge referenced Dr. Walters's testimony on the January 2021 progress reports; per the testimony, those notes apparently reflected that the respondent "[d]oes not appear to have insight into the circumstance surrounding his initial hospitalization and diagnosis." Albeit more recent, that information appears verbatim elsewhere in the WRCH medical records.

 In sum, we discern no prejudice flowing from the judge's consideration of inadmissible evidence that was either favorable to the respondent or otherwise cited to support points not in dispute and corroborated elsewhere in the record. Any other reliance on the inadmissible evidence was minimal such that the judge's decision "was not substantially swayed by the error" (citation omitted). Canty, 466 Mass. at 545. See Matter of J.P., 486 Mass. at 122 (erroneous admission of hearsay statements did not prejudice respondent where there was other evidence sufficient for finding of substantial risk of physical harm). Compare Matter of P.R., 488 Mass. at 145 (prejudice resulted where absent erroneous testimony, "little else remains to attest to whether reasonable alternatives for [respondent's] protection were absent in the community").

 b. Competency findings. The respondent also contends that the petition judge improperly relied on the July 2019 findings of another judge on the issue of the respondent's competency to stand trial and pretrial commitment (competency findings). [Note 20] Any reliance on the substance of those competency findings, which were not admitted in evidence at the hearing, would be error. See Adoption of Zak, 90 Mass. App. Ct. 840, 844 n.7 (2017) (judge may not "judicially notice facts or evidence brought out at the prior hearing" [citation omitted]).

 In a footnote in the background section of the judge's decision on the petition for commitment, she noted that the competency findings contained a discussion of

"[the respondent's] psychosis, history of non-compliance with prescribed medications, insufficient period of time on medication while hospitalized to assure future compliance, 

 Page 870 

the respondent's 'claimed willingness to continue his medications,' and his lack of insight into his mental illness that could lead to him discontinuing his medication 'under the belief that he no longer needs them.'"

In another footnote, the judge also referred to the competency findings in connection with her finding that the respondent had "rais[ed] concerns in the minds of mental health providers and the court(s) that he [would] not remain medication-compliant" in the community. To the extent the judge improperly noted the substance of the competency findings in these two passing references, we are convinced that the judge would have reached the same decision irrespective of the mention of those earlier findings. The properly admitted evidence overwhelmingly established the same historical information about the respondent. Moreover, the judge clearly understood that while the respondent's past actions may be relevant, her task was to evaluate the current risk of harm if the respondent were not committed. [Note 21] Therefore, we discern no prejudice. See Howe v. Prokop, 21 Mass. App. Ct. 919, 920 (1985) ("review of the entire transcript as well as the other findings made by the judge indicate that the finding was unnecessary to the decision and may be disregarded").

 c. Adolescent brain development evidence. The respondent also argues that the judge erred in ignoring his evidence concerning adolescent brain development. The judge permitted the respondent to introduce such evidence, but declined to credit Dr. Welch's opinion that "the respondent 'matured' between December 18, 2020, and January 25, 2021, or even February 12, 2021." The judge, who presided over the hearing, was free to make this credibility determination. [Note 22] See, e.g., Matter of D.K., 

 Page 871 

 95 Mass. App. Ct. 95, 100 (2019).

 Conclusion. [Note 23] The order dated February 22, 2021, allowing the petition for involuntary civil commitment is affirmed.

 So ordered.

FOOTNOTES
[Note 1] The initial order authorized the respondent's hospitalization for a twenty-day period, but that period was extended for an additional twenty days at BSH's request and as authorized under G. L. c. 123, § 15 (b). 

[Note 2] In light of the health concerns arising from the COVID-19 pandemic, the trial and subsequent hearings on the petition for commitment were conducted via video conferencing. 

[Note 3] General Laws c. 123, § 16 (c), governs petitions for further commitment after the expiration of an initial commitment order entered under § 16 (b). 

[Note 4] The respondent also called his mother as a witness but later asked that her brief testimony be struck. 

[Note 5] The WRCH medical records were admitted after the parties reached an agreement as to certain redactions. 

[Note 6] The respondent exercised his right to not speak with Dr. Walters. 

[Note 7] PACT is an acronym for a "program of assertive community treatment." 

[Note 8] Although the commitment order at issue has expired, our case law makes clear that appellate review is appropriate in these circumstances. See, e.g., Pembroke Hosp. v. D.L., 482 Mass. 346, 351 (2019) ("Wrongfully committed patients have a surviving interest in establishing . . . that the orders by which they were committed were unlawful, 'thereby, to a limited extent, removing a stigma from [their] name and record'" [citation omitted]). 

[Note 9] Following a finding of not guilty by reason of lack of criminal responsibility, G. L. c. 123, § 16 (b), expressly confers to the court having jurisdiction over the criminal case the authority to adjudicate a petition for commitment. Although not directly on point, our case law recognizes some limitations to that authority. Specifically, the Supreme Judicial Court (SJC) has determined that noncompliance with certain "mandatory and jurisdictional" requirements of G. L. c. 123 commands dismissal of a petition for commitment. Matter of M.C., 481 Mass. 336, 339 (2019), citing Hashimi v. Kalil, 388 Mass. 607, 609-610 (1983). See Hashimi, supra (petition for commitment dismissed where court violated respondent's right under G. L. c. 123, § 7 [c], to hearing within fourteen days absent consent to continuance). See also Pembroke Hosp., 482 Mass. at 353-354 (where hospital failed to discharge respondent within meaning of c. 123 after initial petition for commitment was denied, District Court lacked jurisdiction over subsequent petition). The respondent urges us that noncompliance with a jurisdictional requirement of the statute warrants dismissal of the petition here. 

[Note 10] "Although § 16 (a) refers to defendants found 'not guilty by reason of mental illness or mental defect,' we employ the terminology from our cases, which use variations of the term 'not criminally responsible.'" Garcia v. Commonwealth, 487 Mass. 97, 98 n.3 (2021). 

[Note 11] The respondent was hospitalized for "observation and examination" for forty days prior to trial under G. L. c. 123, § 15 (b), and for an additional forty days after the finding of no criminal responsibility under § 16 (a). 

[Note 12] While the respondent argues that the recent decision of Garcia, 487 Mass. 97, demonstrates that the Superior Court lacked jurisdiction to hold the respondent following the finding of a lack of criminal responsibility, nothing in that case so much as hints at a jurisdictional bar. In Garcia, supra at 105-106, the SJC concluded that a criminal defendant could not be hospitalized under § 16 (a) absent a constitutionally adequate finding that he posed a likelihood of harm to himself or others. In that case, there was "paltry evidence" of the criminal defendant's likelihood of future dangerousness, id. at 105 -- he had been living in the community without issue and was on two different waiting lists for outpatient treatment at the time of the trial. See id. at 99-100. The criminal defendant there filed a petition under G. L. c. 211, § 3, challenging his confinement (as, presumably, the respondent here could have done). See Garcia, supra at 101. 

[Note 13] Facility is defined as "a private facility for the care and treatment of mentally ill persons, except for [BSH]." G. L. c. 123, § 1. 

[Note 14] In relevant part, G. L. c. 123, § 16 (b), provides: 

"In the event a period of hospitalization under the provisions of [G. L. c. 123, § 16 (a),] has expired, or in the event no such period of examination has been ordered, the court may order the temporary detention of such person in a jail, house of correction, facility or the [BSH] until such time as the findings required by this paragraph are made or a determination is made that such findings cannot be made."

[Note 15] In light of our rejection of the jurisdictional argument, we discern no basis for relief in the circumstances presented here where the respondent did not request release after fifty days and, instead, agreed to entry of the order directing his continued hospitalization. Moreover, as discussed above, § 16 (b) authorized "the court" to order that the respondent remain at WRCH until findings were made on the petition for commitment. 

[Note 16] The respondent's citation to G. L. c. 123, § 4, is misplaced. That statute requires periodic review of the persons committed to a facility or BSH under c. 123 and states, "Following any review under the provisions of this section, or at any other time, any patient who is no longer in need of care as an inpatient shall be discharged or placed on interim community leave." Nothing in that statute requires a hospital to withdraw a petition for commitment. Moreover, this general directive to discharge committed persons must yield to the specific requirements of G. L. c. 123, § 16, limiting a hospital's ability to discharge a committed person found incompetent to stand trial or found not guilty by reason of lack of criminal responsibility. 

[Note 17] The relevant portion of the December 2020 Putney evaluation at issue in the record states: 

"Given the lack of appropriate community-based alternatives to meet his treatment needs and mitigate his risk, it is my clinical opinion, with agreement from his WRCH treatment team, that [the respondent] does meet clinical criteria for filing a petition for involuntary commitment to a psychiatric hospital at this time."

The judge explained in her findings that she took the statement to mean that the respondent "is not an appropriate subject of a petition, rather than the petitioner" (emphasis added). Therefore, irrespective whether the judge misquoted the Putney evaluation, it is clear that she considered Dr. Putney's opinion to be that the respondent should not be committed. The judge also noted that the community-based services that were "deemed essential" by Dr. Putney were "available now if the respondent were discharged."

[Note 18] The judge described "cheeking" as "the technique of holding oral medication inside one's mouth against one's cheek to avoid swallowing the drug." 

[Note 19] The judge made brief reference to the Putney evaluations in connection with her findings concerning the respondent's future use of alcohol if discharged and the respondent misconstruing his mental illness as anger. As discussed above, that information is entirely consistent with other properly admitted evidence in the record and on which the judge also relied. 

[Note 20] The judge was entitled to take judicial notice of the procedural history of the criminal case. See Jarosz v. Palmer, 436 Mass. 526, 530 (2002) ("judge may take judicial notice of the court's records in a related action"). 

[Note 21] As the judge expressly acknowledged, at the time of the commitment hearing, the respondent had been medication compliant since July 2020. 

[Note 22] We are not persuaded by the respondent's argument that Matter of a Minor, 484 Mass. 295, 300-302 (2020), commanded the judge to rely on this evidence in these proceedings. In that case, the SJC concluded that in some cases where a juvenile is the subject of a petition for commitment for substance use disorder treatment under G. L. c. 123, § 35, the judge must "distinguish[] typical adolescent lapses in judgment or self-control from those driven by substance use disorder." Matter of a Minor, supra at 302. In such circumstances, the judge is required to make clear that the decision is "founded on a causal nexus between a likelihood of serious harm and substance use disorder, rather than developmentally typical adolescent misbehavior." Id. Here, there can be no serious argument that the respondent engaged in "developmentally typical adolescent misbehavior." Rather, the respondent was twenty-one years old at the time of commitment, he was committed due to a mental illness (not a substance use disorder), and the judge expressly found a causal nexus between the respondent's likelihood of serious harm to others and his mental illness. 

[Note 23] Having reviewed the admissible evidence, we conclude that the errors discussed above, when viewed collectively, do not warrant reversal of the commitment order. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.